THE TRUSTEES OF THE FREE PUBLIC LIBRARY OF NEWARK, PROSECUTOR. v. THE CIVIL SERVICE COMMISSION OF NEW JERSEY.

Submitted March 21, 1912—Decided July 13, 1912.

The action of the state civil service commission in classifying under the Civil Service act (*Comp. Stat.*, p. 3795) the appointees and. employes of a free public library organized under "An act to authorize the establishment of free public libraries in the cities of the state" (*Pamph. L.* 1884, p. 110), and governed by the revised act (*Pamph. L.* 1905, p. 273)—*Held*, valid because such appointees and employes are in the paid service of the municipality within which such library is located.

---

On *certiorari.*

Before Justices Bergen, Voorhees and Kalisch.

For the prosecutor, *Pitney, Hardin & Skinner.*

For the defendant, *Edmund Wilson,* attorney-general, and *Nelson B. Gaskill,* assistant attorney-general.

The opinion of the court was delivered by

VOORHEES, J. The prosecutor, by this writ of *certiorari*, would set aside the action of the state civil service commission in classifying the appointees and employes of "The Trustees of the Free Public Library of Newark," as part of the civil service of the municipality of the city of Newark.

The following facts appear: The provisions of an act entitled "An act to authorize the establishment of free public libraries in the cities of this state" (*Pamph. L.* 1884, *p.* 110), were duly accepted by the city of Newark at an election on the 11th day of October, 1887; thereafter five trustees were appointed by the mayor of the city of Newark from among the citizens of that city to serve for the terms of one, two, three, four and five years, respectively; said five trustees, together with the then mayor and city superintendent of schools, duly organized, pursuant to the provisions of said act, on the 9th day of May, 1888; the trustees at the present time are the present mayor and city superintendent of schools of said city and five trustees appointed from time to time in succession to the original trustees; the said board of trustees was constituted by said act a body corporate under the name of the prosecutor.

The prosecutor has established, maintains and administers in the said city of Newark a free public library, as authorized by the provisions of the act under which said prosecutor was originally incorporated and by the act entitled "An act concerning free public libraries," approved April 14th, 1905 (*Pamph. L., p.* 273), by the provisions of which the prosecutor is now governed.

The city of Newark, since the adoption of the act, has appropriated and raised by taxation annually for the support and use of said library moneys in accordance with the provisions of the act of 1905, and has paid them over to the treasurer of the prosecutor, to be used by the prosecutor for the support of said library.

On the 27th day of December, 1910, the civil service commission of New Jersey, claiming to act under the provisions of the Civil Service law (*Pamph. L.* 1908, *p.* 235), classified

the employes of the prosecutor as of the classified civil service of the city of Newark, and as subject to the jurisdiction of the civil service commission and to the operation of the Civil Service law.

The question presented is whether the appointees and employes of the corporation known as "The Trustees of the Free Public Library of the City of Newark" fill offices or positions in the paid service of the state or of the city of Newark. If they do not, they are not subject to the provisions of the Civil Service act.

The first general act which authorizes cities to establish free public libraries was passed in 1879. *Pamph. L., p.* 262. Before that, legislation authorizing the formation of corporations for library purposes, referred not to associations of a public character, but in the nature of private corporations, with power to issue stock and disconnected with any governmental agency. See *Pamph. L.* 1854, *p.* 448; *Gen. Stat., p.* 1945; *Pamph. L.* 1856, *p.* 47; *Pamph. L.* 1857, *p.* 409; *Pamph. L.* 1860, *p.* 96; *Pamph. L.* 1867, *p.* 272; *Pamph. L.* 1882, *p.* 34; *Pamph. L.* 1884, *p.* 139, as examples of such enactments.

The act of 1879, *supra,* gave the common council the right to establish public libraries for the benefit of the inhabitants of any city and to levy a tax of not more than one-fifth of a mill on the dollar annually on all taxable property in the city, to be collected like other taxes to be known as the "Library Fund."

General oversight and control by the city is provided for in this act, by the appointment by the mayor, with the approval of council, of the directors, and although such directors have power to make by-laws for their own guidance, in conformity with the act, and exclusive control of the expenditures, &c., yet all moneys are to be deposited in the city treasury, but separate from the city's other funds, and to be drawn by city officers upon the vouchers of the directors.

The library and reading-room shall be forever free to the use of the inhabitants of the city, subject to reasonable rules, to be adopted by the board "in order to render the use * * *

of the greatest benefit to the greatest number." Reports are to be made to common council, and the latter body are empowered to pass ordinances imposing penalties for the punishment of persons injuring the library or grounds, and for the failure to return any books, to be enforced in any manner provided in the charter of the city.

It is true that this act, with the evident intent of encouraging private gifts, provides that "any person desiring to make donations of money * * * shall have the right to vest the title to the money * * * in the board of directors * * * to be held * * * by such board when accepted, according to the terms of the deed, &c., * * * and as to such property the board shall be held and considered to be special trustees."

This act was permissive and did not contain a referendum. It, however, sufficiently indicates a legislative intent to furnish to the inhabitants of cities by means of taxation, free access to books for the improvement of their condition, while yet securing to donors as theretofore, the same security for gifts as if this public character had not been imported into the organization. It was not an incorporation, perhaps, but became a part of the municipal government.

The act of 1884, page 81, may be passed without further comment than to state that it was designed to encourage free libraries, and where an incorporation under the act of 1875, and a free library maintained by public moneys co-existed in the same city, the municipal body might loan the latter to the former, conditional upon the city's representation in the board of trustees of the incorporated association.

We next notice the act of 1884, "An act to authorize the establishment of free public libraries in the cities of this state." *Pamph. L.* 1884, *p.* 110. Under this act the prosecutor claims its present incorporation. It contains a referendum under which its provisions have been adopted by the city of Newark, and the trustees are constituted a body corporate. Seven trustees constitute the board, one of whom shall be the mayor of the city, and one the superintendent of

public instruction *ex officio,* the other five to be appointed by the mayor.

The treasurer is to give bonds to the city for the faithful performance of his duties in an amount which the board of aldermen shall fix. The board of trustees, who shall act without compensation, and are interdicted from incurring expenses or creating obligations in excess of annual appropriations for library purposes, and of its funds on hand, are entrusted with the management of the property which they shall hold in trust, and are authorized to receive from the city the money raised by taxation for library purposes.

By this statute, it is "the duty of the appropriate board of said city annually thereafter to appropriate and raise by tax, in the same manner as other city taxes are assessed, levied and collected in said city, a sum equal to one-third of a mill on every dollar of assessable property * * * of said city, * * * which sum * * * shall be used for no other purpose than that of a free public library."

The trustees may receive and manage any donation made or to be made "for the establishment, increase or maintenance of a free public library within their city."

A supplement passed in 1895 (*Pamph. L.* 1895, *p.* 383) gave the trustees, when, in their judgment, it was advisable, to purchase lands or erect buildings, in excess of annual appropriations and funds on hand, power to certify to council the amount of money necessary for the purpose, and the city authorities in their discretion, with the consent of the mayor, may empower the board to make the expenditure to such amount as the council may deem proper, no land to be purchased except with concurrence of council and approval of mayor, and then the title to be taken in the name of the city, and be exempt from taxation, but the control to be in board of trustees.

The city may issue bonds, with sinking fund provision for their payment, for this purpose, and may direct the library board to pay to the sinking fund moneys then on hand.

In 1905, an act was passed (*Pamph. L., p.* 273) consolidating and revising the laws upon the subject of free

libraries, by which all such organizations are now governed, and inconsistent legislation is repealed, and since July 4th, 1905, when it became operative, the prosecutor has been amenable to it. It is a substantial re-enactment of all previously existing acts.

The prosecutor argues that the legislation hereinbefore referred to places the absolute control and management of the library and its funds raised by taxation in the body corporate created by it, that the establishment of libraries are not usually objects of municipal corporations, either by definition or enumeration, that charters in the state have not ordinarily included such power, and that of Newark (*Pamph. L.* 1859, *p.* 476) is silent in this particular. That their establishment now is possible under the general legislation only after referendum, and that they are then not entrusted to municipal management.

It is asserted that, under the plan outlined in this general legislation, to use the language of the brief, "the library corporation is not a mere fractional part of the municipality, but is an independent entity created by the state, deriving its authority directly from the legislature and expressly designated by that body as the only means whereby a free public library can be maintained at public expense, within the limits of a municipality."

"By this legislation, the conduct of a public library is not only not entrusted to the municipality within whose territory it may be established, but is expressly removed from its control and entrusted to a corporation specially created for the purpose." We cannot give our assent to this argument.

In this state libraries have for many years been considered as charitable institutions. They have been exempted from taxation, and with regard to a specially incorporated library with a stock issue it was held by the Court of Errors and Appeals (*In re Newark Library Association, 35 Vroom* 265), wherein the association contended that it was "a charitable enterprise *pro bono publico,*" that "the charter and history of the association show that it was organized not for pecuniary gain, but for educational purposes, and that so long as

the association was a going concern, the shares of stock represented scarcely anything more than the holders' contribution to this benevolent object."

Of late years, however, highly organized systems of education have been adopted throughout the country, and specially is this true of our state.

The state not only fosters its public school system, but a review of the foregoing legislation, to our minds, indicates a public policy to bring into requisition, as an adjunct to it, the library, as a means of placing in the hands of its citizens sources and collections of knowledge to aid and add to their education, while the public schools are performing their functions, and after the attendants upon the schools have been graduated therefrom.

The spread of knowledge and the making it possible for all citizens to gain an education, is deemed for the highest interest of the state. Public libraries, especially of late years, have been counted as a means to this end, so much so that the legislature has deemed it wise to confer the right upon a municipality to give in aid money raised by taxation to these enterprises.

To sustain the right to make these donations, in view of article 1, sections 19 and 20 of the constitution, which forbid any city to give any money or property to or in aid of any individual association or corporation, and further forbid the donation of land or the appropriation of money, by the state, or any municipal corporation to or for the use of any society, association or corporation whatever, it would seem necessary to hold that these corporations are a branch or a board of the municipal government, public in their character, to manage educational matters for the benefit of the whole community. They have been invested with a right of eminent domain by the state; they foster the general good of the community, by promoting the intellectual health which leads to good citizenship, perhaps as much as boards of health promote the bodily health and physical soundness of the citizen, always considered a requisite to good and efficient government and a matter of governmental concern.

To justify the donations of public moneys, it seems necessary to regard these organizations as public agencies of the state, created by it in connection with its municipalities and as an incidental part of their government.

In *Rutgers College* v. *Morgan, Comptroller*, 41 *Vroom* 460 (at *p.* 473), it was held that the constitution "does not bar instrumentalities for public education provided by the state and under its control by general laws, where the appropriation is made for such schools. * * * They were not intended to narrow or circumscribe the legislative power to furnish facilities by general laws for public education under its own supervision."

A construction of the Library act holding libraries thus constituted to be under the municipal control and as furnishing facilities for public education, will render it consonant with the constitution, and enable the needed support to be furnished as contemplated by the legislature.

That the employes of this free public library are officers in the paid services of the city of Newark, seems to follow at once from the determination that the library association, properly considered, is a mere municipal board, and not an independent entity, although constituted a corporation by statute, and such we think is its true character.

Although the legislature saw fit, for its convenience and for purposes of the administration of this branch of its educational duty, as now constituted under its public policy, to create a corporation. will not prevent such corporation from being considered a mere branch or agency for that special purpose. *Hirsch* v. *Burk, ante p.* 146. See, also, 1 *Dill. Mun. Corp.* (*ed.* 1911) 696.

The action of the state civil service commission in classifying the appointees and employes of the prosecutor will therefore be affirmed.