Hillsborough,
April 1, 1924.

### ATTORNEY-GENERAL (*ex rel.* GEORGE E. TRUDEL, *Mayor*) *v.* HALBERT N. BOND.

Under Laws 1921, *c.* 226, a member of the finance commission for Manchester is a municipal officer of the city and is entitled to remain in office until his successor is lawfully appointed and has duly qualified.

QUO WARRANTO, alleging that the respondent was duly appointed a member of the finance commission of the city of Manchester to serve only until January 1, 1924; that though that date is long past he still claims to hold and use and does use the right and franchise of a member of said commission.

The respondent answered, alleging that under said appointment it was his duty to hold said office and to perform the duties thereof until his successor should be duly appointed and qualified; that no person has been appointed as his successor; and moved that the information be dismissed.

The questions of law thereby raised were reserved and transferred without a ruling by *Branch*, J.

*Irving A. Hinkley*, attorney-general, and *Thomas J. Bois* (*Mr. Hinkley* orally), for the relator.

*Tuttle, Wyman & Starr* (*Mr. Tuttle* orally), for the defendant.

PARSONS, C. J. The question raised requires a construction of *c.* 226, Laws 1921, creating "A finance commission in the city

of Manchester." The appointment of the commission is provided for in the first section of the act, which is, "Section 1. Within thirty days after the passage of this act, the governor, with the advice and consent of the council, shall appoint a finance commission for the city of Manchester to consist of three persons, inhabitants of and qualified voters in the city of Manchester, who shall have been such for at least three years prior to the date of their appointment. One commissioner shall be appointed to serve until January 1, 1922; one to serve until January 1, 1923; and one to serve until January 1, 1924, and thereafter as the terms of office expire in each year, one member for a term of three years."

The question raised by the proceeding is whether the terms of the persons appointed under this section terminate at the expiration of the times for which they may be appointed or whether they continue to hold office until their successors are appointed and qualified.

The attorney-general claims that the members of the finance commission created by this act are not municipal but are state officers. While the decision of this question in favor of the attorney-general's contention would not necessarily dispose of the main question, the contrary conclusion leaves little in controversy.

The only ground upon which it can be claimed that these officers are state rather than city officers is the fact that they are appointed by the governor and council instead of by city officials or chosen by the city electorate, in short that they hold office by authority of the state government rather than by that of the city. But whether they are state or city officers "is determined by the nature and extent of their jurisdiction, and by the functions which they have to perform, rather than by the time and manner of their election or appointment. If justices of the peace were elected by each town, as they are in some states, they would not therefore be town officers; and if county commissioners were appointed by the governor and council, they would be none the less county officers." *Carpenter*, J., *State* v. *Bean,* 63 N. H. 249, 251.

The members of the finance commission must all be inhabitants and qualified voters of the city and must have been such for three years prior to their appointment; their duties relate entirely to the city of Manchester and their service is rendered solely for the benefit of that city; they are to investigate and report as to its financial affairs (s. 2); to veto action of the mayor and aldermen as to appropriating money or raising it by borrowing or taxation, or to reduce the amount so appropriated or raised (s. 4); no financial

paper can be issued by the city without the approval of the commission (*s.* 5); and they have general control over all money appropriated by the city (*s.* 6).

Selectmen, supervisors, and police officers act in part as public governmental officers and not as agents of the town, but it would not necessarily follow that within the meaning of the question now under consideration they were not town officers. Supervisors do not act as agents of the town in making out the check-list, but they were none the less held to be town officers within the meaning of the statute providing that town officers continue in office until others are chosen and sworn in their stead. G. L., *c.* 40, *s.* 14; *State* v. *Bean,* 63 N. H. 249, 252. But that question does not here arise because the finance commission of Manchester have no duties of a public governmental nature to perform. They act solely for and as agents of the city. Their duties and powers are those imposed upon the selectmen of towns or upon the voters in town meeting and by the city charter upon the council, aldermen and mayor, Laws 1846, *c.* 384, and later upon the mayor and aldermen, Laws 1897, *c.* 198, *s.* 1; Laws 1915, *c.* 249, *s.* 1, or upon the mayor, Laws 1915, *c.* 249, *s.* 2. Performing only duties theretofore intrusted to officials clearly municipal, the finance commission of Manchester are municipal officers of the city.

Although by some authorities (see *People* v. *Oulton,* 28 Cal. 44) the rule is extended to public officers generally, the great weight of American authority is that, unless it is otherwise provided, a municipal officer although elected or appointed for a definite term is entitled to remain in office until his successor is lawfully elected or appointed and has duly qualified. Cooley, Mun. Corp., *p.* 209, *s.* 58; Mechem, Public Officers, *p.* 257, *s.* 397; 1 Dill. Mun. Corp. (2d *ed.*), *ss.* 158, 159; 28 Cyc. 427.

"All town officers shall continue in office until . . . others shall be chosen or appointed and qualified in their stead, except in cases where the law otherwise directs." P. S., *c.* 43, *s.* 36. By virtue of the statute "a vacancy in a town office not excepted from its operation, and once filled by election . . . cannot happen by reason of a failure to elect. The sole object of the statute was to prevent a vacancy which it was supposed, whether correctly or not, might otherwise arise from that cause. Under it an officer once chosen and sworn continues to hold the office *de jure* not only until the next election, but until another is elected and qualified in his place." *State* v. *Hadley,* 64 N. H. 473, 474.

As has been shown, the suggestion of Judge *Carpenter* that the statute was unnecessary is well founded. But aside from the general law, the statute controls the case if the term "town officer" can properly be construed to include like officers of a city.

This provision has been in force since 1791. Act of February 8, 1791, *s.* 3; N. H. Laws, vol. 5, *p.* 589. When the provision was adopted there were no cities or city officers in the state. There were none until long afterward. The charter of the city of Manchester was adopted in 1846. By it the city was divided into wards, "each of which, for certain purposes, is allowed the powers and privileges of towns, and for other purposes they each constitute a part of the city, all of which, for some purposes, constitutes but a single town." *Charter of Manchester*, 47 N. H. 277, 279.

Although the statute when enacted applied only to town officers, when after making provision for officers of like municipal organizations under the name of cities the legislature repeatedly reënacted the law and extended it to officers appointed as well as elected, P. S., *c.* 43, *s.* 36, it may well have been intended to include within the provisions officers of such municipalities whether called towns or cities. By *s.* 5, *c.* 1, Gen. St., the first general revision of the laws after the creation of cities, it is provided that in the construction of all statutes the word town may include city. P. S., *c.* 2, *s.* 5. The two organizations have the same object, the convenient administration of government in certain contiguous areas, and the law specially provides, "All provisions of statutes, now made or hereafter enacted, relating to towns, shall be understood to apply to cities." P. S., *c.* 46, *s.* 2. The holding over of an elected or appointed officer is not to advantage the officer, but to benefit the town, to prevent the confusion which might result from a vacancy in the office. The statute means that provisions enacted to enable towns to effect the purposes for which they are organized shall apply to cities as well. If the second clause of the statute that "all provisions relating to the selectmen and town clerks of towns shall be construed to apply to the mayor and aldermen and clerks of cities" sustains the argument that all statutes relating to town officers are not made applicable to all city officers, the argument does not meet the point that preventing the inconvenience of a vacancy in office benefits the town rather than the officer. While the second clause does sustain the contention that as to officers performing in cities the duties of selectmen, the provisions relating to selectmen should apply. Such duties are placed upon the finance

commission. For the performance of these duties and the orderly progress of financial administration in Manchester as now organized the continuous operation of the finance commission is of importance. It is not probable the legislature contemplated a situation which should cast doubt upon the validity of the action of a board vested with so extensive power. By general law and the statutes of the state it is clear each member of the commission holds office until his successor is appointed and qualified unless it is otherwise provided. Stress is placed upon the fact that under the statute and the respondent's commission his term extends to January 1, 1924. Upon reading the whole section it is clear that the purpose was to establish three-year terms, one of which should expire on the first of January each year, and that the requirement that the original appointments should terminate on definite dates was intended to put this scheme into operation. No reason can be suggested for a design that the first three appointments should terminate at a definite date, while the subsequent ones appointed "for a term of three years" should under the general rule hold until their successors were appointed and qualified. The long list of statutes cited in the attorney-general's brief as to which it is claimed specific provision is made for continuance in office until a successor is chosen or qualified provides for state officers only.

So far as *Beck* v. *Hanscom*, 29 N. H. 213, is in conflict herewith, it is overruled.

*Information dismissed.*

SNOW, J., was absent: the others concurred.