EZRA L. NOLAN, CHARLES H. LENDER, AND ANNA ZE-LINSKI, INDIVIDUALLY AND AS MEMBERS OF THE BOULEVARD COMMISSIONERS OF THE COUNTY OF HUDSON, AND THE BOULEVARD COMMISSIONERS OF THE COUNTY OF HUDSON, PLAINTIFFS-APPELLANTS, v. GEORGE J. FITZPATRICK, JOSEPH E. COLFORD, JOSEPH E. CONNELLY, JOSEPH H. KENNY, WILBUR J. McGOWAN, WILLIAM V. O'DRISCOLL, JOSEPH A. SORIERO, JAMES J. DONOVAN, AND F. JOSEPH O'HARE, INDIVIDUALLY AND AS MEMBERS OF THE BOARD OF CHOSEN FREEHOLDERS OF THE COUNTY OF HUDSON, AND THE BOARD OF CHOSEN FREE-HOLDERS OF THE COUNTY OF HUDSON, DEFEND-ANTS-RESPONDENTS.

Argued May 5, 1952—Decided May 26, 1952.

478

*Mr. Maurice C. Brigadier* argued the cause for the appellants.

*Mr. Frederick J. Gassert* argued the cause for the respondents (*Mr. Daniel T. O'Regan,* County Counsel).

The opinion of the court was delivered by

VANDERBILT, C. J.   On December 28, 1951, the plaintiffs as the Boulevard Commissioners of the County of Hudson made a written requisition on the defendant board of chosen freeholders of the county pursuant to *R. S.* 27:17–7 for $1,175,534, being the amount the commissioners deemed necessary to carry out their statutory responsibilities.   On January 30, 1952, the defendant board advertised its proposed budget for 1952 including an appropriation to the plaintiff commissioners of only $800,000.

On the same day the plaintiffs instituted this suit in lieu
of a prerogative writ, seeking to compel the defendant board
to raise the total amount of their requisition and to obtain
a stay meantime against its adopting its proposed budget
without including the total amount requisitioned by the
plaintiffs. The trial court denied the stay on the ground
that it lacked jurisdiction until the plaintiffs had exhausted
their administrative remedies with the Director of the Divi-
sion of Local Government and the Local Government Board.
Then followed cross-motions for summary judgment on which
the trial court denied the plaintiffs' application and granted
the defendant's for the same reasons as on the original
motion. From the three orders entered on the trial court's
rulings the plaintiffs appealed to the Appellate Division of
the Superior Court, and we have certified the appeal here on
our own motion.

First we must determine whether the plaintiff com-
missioners' requisition is mandatory on the defendant board
of chosen freeholders, or whether that board in making up its
annual budget may overhaul the plaintiffs' requisition. The
three boulevard commissioners, who are elected at large in
the county for three-year terms, *R. S.* 27:17–2, are given the
exclusive right with respect to the maintenance, repair and
control of "a county road," *R. S.* 27:17–5 (see also *R. S.*
27:17–15), in this case the Hudson Boulevard running some
20 miles north and south throughout the county. The statute
vesting these exclusive powers in the boulevard commissioners
further gave them "the use and possession of all property and
plant of the county used for maintaining, lighting and repair-
ing such roads," *R. S.* 27:17–8, as well as the exclusive right
to pass ordinances for the regulation and use of the road,
*R. S.* 27:17–5. It is against this background that *R. S.*
27:17–7, the crucial section of the statute on this appeal,
must be read:

"On or before January first, in each year, the commissioners shall
make a requisition in writing on the board of chosen freeholders of

the county, for the moneys necessary to enable the commissioners to carry out the purpose of this chapter.

The board of chosen freeholders shall cause the amount to be raised and collected in the same manner as money for other county purposes and the moneys thus raised shall remain a fund in the hands of the county treasurer to be used for such purposes only, and to be drawn, on warrants signed by the president and secretary of the commission, and the board of chosen freeholders shall have no control over the fund."

The legislative intent of this section is clear and unambiguous. Having taken the control and maintenance of the boulevard from the defendant board of chosen freeholders and vested it in the plaintiff boulevard commissioners, the Legislature, by the first paragraph of the quoted section of the statute, imposed a mandatory duty on the plaintiff commissioners to requisition each year the amount necessary to carry out their statutory responsibilities. The second quoted paragraph imposed a corresponding mandatory duty on the defendant board of chosen freeholders to raise the amount requisitioned each year by the plaintiff commissioners. The money so raised, like the property committed to the care of the boulevard commissioners, *R. S.* 27:17-5, *supra,* is not subject to the control of the board of chosen freeholders, but is a separate fund in the hands of the county treasurer for the use of the boulevard commissioners only. The right of the boulevard commissioners to the requisitioned sum and the duty of the board of chosen freeholders to raise such sums correspond to the familiar right of each county to receive from the several municipalities within the county the sum requisitioned from each of such municipalities annually for county taxes, *Booth v. Parnell,* 12 *N. J. Mis. R.* 413 (*Sup. Ct.* 1934). Nowhere in the act here in question is there any provision giving the board of chosen freeholders the power to review and approve or revise the amount requisitioned by the boulevard commissioners, such as is given to the board in the case of county libraries, *R. S.* 40:33-9, or county park systems, *R. S.* 40:37-14, *N. J. S. A.* 40:37-15.1, *R. S.* 40:37-233, 234; see also *Union County Park Commission v. Board of Chosen Freeholders of Union County,* 3 *N. J.*

73 (1949), where the language of the statute in each case clearly indicates the legislative intent to vest discretion, either absolute or within statutory limits, in the board of chosen freeholders as to the amount of the annual appropriation it will make to these bodies. On the contrary, the situation here is similar to the annual requisition from each county board of school estimate, *N. J. S. A.* 18:15–58.12, which is mandatory on the county, or the estimate for the use of the county mosquito extermination commission, which is likewise mandatory on the county within the limits prescribed by *R. S.* 26:9–22, 23.

In a wide variety of cases, moreover, having to do with the administration of justice our courts, acting under statutes indicating an intent to make requisition thereunder binding on the county, have upheld as mandatory a bill of associate counsel in a homicide case, *Lindabury v. Freeholders of Ocean,* 47 *N. J. L.* 417 (*Sup. Ct.* 1885), a bill of a court reporter, *Knight v. Freeholders of Ocean,* 48 *N. J. L.* 70 (*Sup. Ct.* 1886), a bill of a detective, *Irving v. Applegate,* 49 *N. J. L.* 376 (*Sup. Ct.* 1887), and a requisition for the equipment and maintenance of a county criminal district court, *Carrick v. Hudson County,* 126 *N. J. L.* 181 (*Sup. Ct.* 1941). In like manner under similar mandatory statutes requisitions relating to the operation of the election machinery within the county have been enforced against the county, *McDonald v. Freeholders of Hudson,* 99 *N. J. L.* 393 (*E. & A.* 1923); *Sewell v. Hudson County,* 126 *N. J. L.* 186 (*Sup. Ct.* 1941). Statutes imposing mandatory obligations on the counties are thus no novelties in our law. The Legislature where it desires to confide discretion to a board of chosen freeholders has experienced no difficulty in finding apt language to do so. Where, as here, it has not only employed mandatory language with respect to appropriations but by the entire statutory scheme of relations between the boulevard commissioners and the board of chosen freeholders has indicated an intent to free the boulevard commissioners from responsibility to the board of chosen freeholders, it is not for

us to question the wisdom of the legislative intent either as to the method of appropriating funds to the boulevard commissioners or the very existence of the boulevard commissioners as an independent political corporation.

The defendant board of chosen freeholders has directed our attention to the fact that some of the funds requisitioned by the plaintiff commissioners are for a "Bus Bureau" with numerous employees to provide starter service for privately owned buses operated on the boulevard, contending that such expenditures would be illegal. In like fashion it asserts that the sums requisitioned for the operation of a police force are not within the purview of *R. S.* 27:17–7. The sums involved in these expenditures are substantial, amounting in the case of the bus bureau to $21,250, and in the case of the police department to $479,300. These are questions of law which can be settled only by appropriate legal proceedings. For example, the defendant board of chosen freeholders, like any taxpayer within the county, has the standing to attack the annual requisition directly in the courts either because of the illegality of any item therein or on the ground that any item is excessive or unnecessary. But this right to question such items in the courts does not give the defendant board the power to take the law into its own hands, for to do so would defeat the clear legislative intent.

The conclusion we have reached as to the mandatory nature of the defendant's responsibility to the plaintiffs leads us inevitably to the further holding that the plaintiffs' appropriate remedy is a proceeding in lieu of *mandamus, Carrick v. Hudson County, supra,* 126 *N. J. L.* 181 (*Sup. Ct.* 1941); *Sewell v. Hudson County, supra,* 126 *N. J. L.* 186 (*Sup. Ct.* 1941). But the defendant board urged and the trial court held that it was without jurisdiction until the plaintiff commissioners had exhausted their administrative remedies. *Rule* 3:81–14 dealing with the exhaustion of remedies,

"Except where it is manifest that the interests of justice require otherwise, proceedings under Rule 3:81 [in lieu of prerogative writs]

shall not be maintainable, so long as there is available judicial review to a county court or inferior tribunal or administrative review to an administrative agency or tribunal, which has not been exhausted."

does not go to the jurisdiction of the Superior Court to entertain an application for relief in a proceeding in lieu of a prerogative writ, but it is addressed solely to the question of whether or not the matter is ripe, as a matter of policy, for judicial determination.

As we set forth at length in *Ward v. Keenan*, 3 *N. J.* 298 (1949), our prime objective in exercising the jurisdiction confided to us by *Article VI, Section V, paragraph 4* of the *Constitution of* 1947 in providing by rules of court for proceedings in lieu of prerogative writ has been to safeguard individual rights against public officials and governmental bodies, while at the same time avoiding the defects of procedure that have led to criticism. It was with this principle in mind that we incorporated in our rule the saving clause "except where it is manifest that the interests of justice require otherwise," because we realized the inconvenience, expense and injustice that must necessarily flow from the arbitrary enforcement of the doctrine of the exhaustion of administrative remedies in each and every case, regardless of the circumstances and the interests of justice. The exceptions to *Rule* 3:81–14 intended by the saving clause in the rule are the equivalent in proceedings in lieu of a prerogative writ to a motion for summary judgment in ordinary civil actions, *Rule* 3:56. In *Ward v. Keenan* on the ground of hardship we declined to follow the federal doctrine as laid down in *Myers v. Bethlehem Steel Shipbuilding Corp.*, 303 *U. S.* 41, 58 *Sup. Ct.* 459, 82 *L. Ed.* 638 (1938), and later cases, and our views have been cited with approval in a recent study of the subject:

"The doctrine of exhaustion of administrative remedies should be relaxed in keeping with what many people believe to be the intent of Section 10. Thus important questions of procedure may be determined in advance of ofttimes long and costly hearings which in the end are invalidated and the process begun anew in line with

the court's ruling. No hard and fast rule of thumb need be codified to achieve the desired end here; judges are scarcely so insensible to the subtle intricacies of delaying the proceedings and bad faith harassments as to be unable to 'sift the wheat from the chaff' when applications for a declaratory order or an injunction are filed in advance of a final administrative order. Nor does the argument that such a practice would overburden the courts or disrupt the administrative process seem weighty; the length of time necessary to obtain a ruling on a preliminary injunction case is relatively short, and those cases presenting genuine issues of jurisdictional and procedural propriety could be processed with similar expedition. Such discretion should be expressly given to the courts by an amendment to the Act. We have waited too long and wasted too much time and money with administrative proceedings that drag on in excess of two years under procedures that are manifestly improper; it is time to reassess the situation and make provision to avoid a continuation of an unjust and unconscionable practice. More than one private litigant has died on the vine in an attempt to exhaust an inexorably inexhaustible (in time) administrative remedy, when had there been access to the courts the manifest justice of his case would have removed the stigma," Netterville, "*The Administrative Procedure Act: a Study in Interpretation*," 20 *Geo. Wash. L. Rev.* 1, 85-86 (1951).

In *Ward v. Keenan* we recognized two exceptions in the interest of justice to the rule of exhaustion of remedies, the first where the jurisdiction of the statutory tribunal was questioned on persuasive grounds and the second where the statutory tribunal had jurisdiction but the charges asserted before it were so palpably defective that its jurisdiction was merely colorable. But, as was clearly set forth in *Waldor v. Unterman,* 10 *N. J. Super.* 188, 192 (*App. Div.* 1950), we nowhere said that these were the only exceptions. On the contrary, whenever the rule of exhaustion of remedies is asserted as a defense in a proceeding in lieu of prerogative writ *Rule* 3:81–14 both expressly and in spirit calls for a determination as to whether or not the interests of justice require an exception.

What are the requirements of justice in the instant case? The question presented in this case is solely one of law. Any determination of that question either by the Director of the Division of Local Government, *N. J. S. A.* 40:2–53, or by the Division of Local Government, *N. J. S. A.* 52:27BB, would clearly be subject to judicial review, *N. J. S. A.* 40:2–53

and *N. J. S. A.* 52:27BB–20. On such judicial review of a question of law the opinions of these administrative tribunals would not be persuasive as they would be on questions of fact within their purview. The only result of requiring an exhaustion of administrative remedies where only a question of law is in issue would be useless delay, and this in the interest of justice cannot be countenanced. The case thus presents another instance (*i. e.,* where the disposition of the matter depends solely on the decision of a question of law) in addition to the two situations specifically stated in *Ward v. Keenan* where under *Rule* 3:81–14 the interests of justice do not require the exhaustion of administrative remedies. But it is not to be implied that a case falls within the exception to *Rule* 3:81–14 only if it fits into one of these three classes, for they are not intended to be exclusive. In every case the court should determine whether it is in the interest of justice to dispense with the requirement that the plaintiff exhaust other judicial or administrative remedies, bearing in mind, however, that *Rule* 3:81–14 itself dictates that the interest of justice is ordinarily best served by requiring the plaintiff to first exhaust his other remedies and that it is only in special circumstances that the interest of justice will require otherwise.

The plaintiffs' motion for a stay has been rendered moot by the adoption by the defendant board of its annual budget for 1952, and the appeal as to this motion is accordingly dismissed. The two orders on the motions for summary judgment are reversed and the cause is remanded with instructions to direct the defendant board of chosen freeholders to appropriate forthwith the moneys requisitioned by the plaintiff commissioners for 1952. No costs are allowed on this appeal.

*For. reversal*—Chief Justice VANDERBILT, and Justices OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN —6.

*For affirmance*—Justice HEHER—1.