27 N.J. Super. 290 (1953)
99 A.2d 386
STATE OF NEW JERSEY, DEPARTMENT OF CIVIL SERVICE, PLAINTIFF,
v.
JAMES P. CLARK, ET AL., INDIVIDUALLY AND AS MEMBERS OF THE BOULEVARD COMMISSION OF THE COUNTY OF HUDSON, AND THE BOULEVARD COMMISSIONERS OF THE COUNTY OF HUDSON, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided August 21, 1953.
*292 Mr. Theodore D. Parsons, Attorney-General of the State of New Jersey (Mr. John W. Griggs, Deputy Attorney-General, appearing), attorney for the plaintiff, for the motion.
Mr. Reynier J. Wortendyke, Jr., attorney for the intervening co-plaintiffs.
Mr. Daniel T. O'Regan, County Counsel (Mr. Frederick J. Gassert, County Attorney, appearing), attorney for the defendants, contra.
WOODS, J.S.C.
This is a motion brought in proceedings instituted in lieu of prerogative writ under Rule 3:81. Originally the suit was instituted by plaintiff Department of Civil Service of New Jersey to compel the Boulevard Commissioners of the County of Hudson and the members thereof to submit to the plaintiff all the names of their employees within the classified service and the wages and compensation to be paid to each at regular pay intervals from January 16, 1953 agreeable to the provisions of R.S. 11:22-20. After the complaint was filed the officers of Local No. 17 of the New Jersey State Patrolmen's Benevolent Association, Inc., of which the police employees of the Boulevard Commissioners *293 of the County of Hudson are members, were permitted to intervene as co-plaintiffs by order of the court made on April 24, 1953. The amended complaint alleges that on November 7, 1911 the provisions of Title 11 of the Revised Statutes of New Jersey (Civil Service) were adopted by referendum by the electorate of Hudson County, and that thereafter the names of all of its employees within the classified service and the wages and compensation to be paid to them were duly certified and forwarded to the Department of Civil Service as required by R.S. 11:22-20. As aforesaid, on January 16, 1953 the defendants failed to submit for certification the information required under the statute, and notified the Department of Civil Service that they were discontinuing such practice for the reason that the employees of the Boulevard Commissioners of the County of Hudson were not under Title 11 and were not entitled to the protection of civil service.
Plaintiffs demand judgment:
"(a) declaring the employees of the Boulevard Commissioners of the County of Hudson to be within the protection of Title 11 of the Revised Statutes; (b) for an order requiring the defendant Boulevard Commissioners of the County of Hudson through their duly constituted disbursing officers to submit to the plaintiff all names of the Commission's employees within the classified service and the wages and compensation to be paid to said employees, at regular pay intervals from January 16, 1953, in compliance with the statute made and provided and the rules and regulations of the said Commission; and (c) for costs."
By amended answer the defendants admit the referendum as stated in the complaint and the adoption of Title 11 of the Revised Statutes of New Jersey by and for the County of Hudson, but deny that the same is applicable to the Boulevard Commissioners of the County of Hudson and the employees thereof.
Defendants put to the court the issue in this form:
"Does the adoption of the provisions of the Civil Service Law for the County of Hudson at a General Election held in November, 1911, pursuant to the provisions of Chapter 156 of the Laws of *294 1908 (and the amendments and supplements thereto, now R.S. 11:20-1 et seq.) subject the members of the Boulevard Commission of the County of Hudson, an independent political corporation, and its employees to the provisions of the Civil Service Law?"
Defendants contend it does not. They contend that the boulevard commissioners were created by act of the Legislature, L. 1898, c. 106 (now R.S. 27:17-2 et seq.), wherein it is provided that the said commissioners shall be elected by the voters of the county wherein the commission shall function, and that by the provisions of R.S. 27:17-8, N.J.S.A.:
"The commissioners shall be entitled to the use and possession of all property and plant of the county used for maintaining, lighting and repairing such road and may employ such agents, servants and employees as they may deem necessary for the proper performance of the work to be done under this chapter, and may fix their compensation which shall be paid out of the fund appropriated for the use of the commission as hereinbefore provided."
They aver that they are an independent political corporation and base their argument on a recently decided case by the Supreme Court of New Jersey by which they allege that it has been determined that the "legal status of the Boulevard Commission" is "entirely separate from and free from any control whatsoever of the County of Hudson." In stressing this point, defendants continue: "In the case of Nolan v. Fitzpatrick, et al., 9 N.J. 477 (1952) Chief Justice Vanderbilt, speaking for the Supreme Court, discusses the legal status of the boulevard commission, the manner of its election and its rights and powers thereunder." They quote:
"The three boulevard commissioners, who are elected at large in the county for three-year terms, R.S. 27:17-2, are given the exclusive right with respect to the maintenance, repair and control of `a county road,' R.S. 27:17-5 (see also R.S. 27:17-15), in this case the Hudson Boulevard running some 20 miles north and south throughout the county. The statute vesting these exclusive powers in the boulevard commissioners further gave them `the use and possession of all property and plant of the county used for maintaining, lighting and repairing such roads," R.S. 27:17-8, as well as the exclusive right to pass ordinances for the regulation and use of the road, R.S. 27-17-5." (9 N.J. 481)
*295 * * * The Legislature where it desires to confide discretion to a board of chosen freeholders has experienced no difficulty in finding apt language to do so. Where, as here, it has not only employed mandatory language with respect to appropriations but by the entire statutory scheme of relations between the boulevard commissioners and the board of chosen freeholders has indicated an intent to free the boulevard commissioners from responsibility to the board of chosen freeholders, it is not for us to question the wisdom of the legislative intent either as to the method of appropriating funds to the boulevard commissioners or the very existence of the boulevard commissioners as an independent political corporation." (9 N.J. 483-484)
In short, the court is called upon to rule on the question: Does the Nolan v. Fitzpatrick decision, denominating the boulevard commissioners "an independent political corporation," exclude the Boulevard Commissioners of the County of Hudson and the employees thereof from the protection of the Civil Service Act?
In analyzing the court's decision in Nolan v. Fitzpatrick, supra, I do not find the word "autonomous" used. The boulevard commissioners are characterized as "an independent political corporation." Concededly, that was the legislative design and subsequent interpretation by the court. In a large way the defendants are a self-governing and independent body and subject to their own rules. But, more exactly, the commissioners constitute an authority or commission which draws its subsisting functioning power from the taxing source of the County of Hudson. In this respect it is neither self-sufficient nor existing as an independent political corporation. It does not subsist on tolls or receipts of its own creation. It is rather a form or stage of political development of the county. In the ultimate it subsists on taxation. R.S. 27:17-7 and R.S. 27:17-16. Taxes of the county or a bond issue by the board of chosen freeholders, in a case where the annual appropriation is insufficient, are its only source of revenue. In the case of Trustees of Free Public Library of Newark v. Civil Service Commission, 86 N.J.L. 307, 90 A. 261 (E. & A. 1914), in which the only question presented upon appeal was: "Whether the Civil Service Commission was warranted in classifying the appointees of *296 the Free Public Library of the City of Newark, within the provisions of the Civil Service Act (P.L. 1908, p. 235)," Justice Minturn stated:
"In the case at bar we may concede the independent corporate character of the Free Public Library, for which the appellants contend, but the essential fact remains that its employes are in the paid service of the municipality, which has accepted the provisions of the civil service act, and the conclusion logically follows, in view of our former adjudication [refers to case of Sullivan v. McOsker, 84 N.J.L. 380, 86 A. 497] that the appellants' employes are subject to the provisions of the civil service act."
The fact that the boulevard commissioners derive their powers from the State and not from the county cannot be questioned, but the commission comes into being only after a county has adopted by referendum "An act to authorize the board of chosen freeholders * * * to lay out, open, construct, improve and maintain a public road therein," L. 1888, c. 274, p. 397, now R.S. 27:17-1. It is then that "there shall be elected at large in the county three commissioners to be known as `boulevard commissioners of the county of ____.'" R.S. 27:17-2. The boulevard commissioners "set-up" in some ways differs from, yet is analogous to, the structure, purpose and operation of park commissions (R.S. 40:37-96 et seq.). Once created, both bodies must requisition the board of chosen freeholders for the moneys necessary to meet the costs of operation. The funds are raised by local taxation. The purpose of the existence of both commissions is for the benefit of the public. The law laid down in the case of Parks v. Union County Park Commission, 7 N.J. Super. 5 (App. Div. 1950), applies to the question before us. In that case the chief of the Union County Park Police brought the action to recover a sum representing his salary and bonus for the period while he was on leave of absence engaged in field training with the Officers Reserve Corp of the Army. Plaintiff asserted that the park commission was an agency of the County of Union, and that, therefore, he, as a county employee, was entitled to his pay pursuant to R.S. 38:23-1. This defendant *297 denied, contending that the park commission was not an agency of the county. Judge Eastwood, in delivering the opinion of the court held:
"The first step in the creation of a park commission is initiated by the County Board of Freeholders, as a result of which the question of its establishment is subject to a referendum of the voters; if created, the cost of its operation is borne by local taxation; the money essential for its operation is requested in writing by the Park Commission to the Board of Freeholders, who, `* * * after a public hearing on said request, and after determining in their discretion that funds for the maintenance of said county park system are necessary, may hereafter annually appropriate funds for the maintenance of said county park system; * * *.' R.S. 40:37-101.1; that the funds, after they `shall have been raised and appropriated, shall be paid over to and expended by the said park commission of said county for the maintenance of said county park system in the same manner as any other department of government of said county.' * * * It is readily discernible from the foregoing statutory powers vested in the County Park Commission that it is an instrumentality which is undeniably an adjunct of the county government; that it is established for the beautification and resulting attractiveness of the county and for the benefit of all the residents; that the cost of its acquisition, operation and maintenance becomes the burden and responsibility of all of the taxpayers of the county. As stated in Glick v. Trustees of Free Public Library, 1949, 2 N.J. 579, at pages 583, 584, 67 A.2d at pages 463, 465: `* * * It is an agency of the municipality notwithstanding its incorporation as a body politic. That in itself does not give rise to a relationship radically different in character from that which would otherwise exist. It is the substance and not the form of the creation that is the key to the legislative design.' Cf. Trustees of Free Public Library of Newark v. Civil Service Commission, 83 N.J.L. 196, 83 A. 980 (Sup. Ct. 1912); affirmed 86 N.J.L. 307, 90 A. 261 (E. & A. 1914). It necessarily follows that plaintiff is an employee of Union County." (Italics the court's.)
The affidavit of Louis J. Russo, Secretary and Chief Examiner of the Department of Civil Service (June 17, 1953), attached to the notice of motion for summary judgment, reveals that from January 1, 1912 (the electorate of the County of Hudson having by referendum on November 7, 1911 adopted the provisions of Title 11) until January 16, 1953, the employees of the Boulevard Commissioners of the County of Hudson were classified and their wages and compensation *298 certified by the Civil Service Department pursuant to R.S. 11:22-20. Defendants discontinued their practice of submitting the names and salaries of their employees to the Civil Service Department for certification, having concluded that Title 11 did not apply to the Boulevard Commissioners of the County of Hudson since they were an "independent political corporation," and therefore their employees were not entitled to the benefits of the Civil Service Act.
Defendants also argue that it is pertinent to the status of the defendants to note that although the Legislature has created eight types of authorities in the last 15 years, only one of these has been made subject to the provisions of the Civil Service Act, namely, the housing authority. It is also pertinent to note that while the Housing Authority Act as originally passed in 1938 (N.J.S.A. 55:14A-1 et seq.) was silent on the inclusion or exclusion of the employees under civil service, the Legislature deemed it necessary to pass a specific amendment to the act in 1943 (N.J.S.A. 55:14A-6.1) for bringing the housing authority employees within the purview of the Civil Service Act. Defendants contend that only by an act of the Legislature can they be brought under and made subject to Title 11 (Civil Service Act). The Hudson County Boulevard Commissioners, it is true, have some characteristics in common with the "authorities." The boulevard commissioners and the "authorities" each are empowered to carry out the purposes for which they were created in accordance with their own plans and insight into the problems presented; each have sole control over the employment of their agents, servants and employees and the right to prescribe the compensation they shall be paid. There the similarity ends. The most important difference between the boulevard commissioners and the "Authorities," and it is the crucial one, is that the former depend entirely upon the support of the board of chosen freeholders' taxing power to function; the latter are self-supporting. The fact that it is mandatory upon the board of chosen freeholders to raise by general *299 taxation or a bond issue the moneys requisitioned by the boulevard commissioners, does not suffice to justify their classification, for all purposes, in the category of "authorities" or as a separate corporate entity, even though they may properly be styled "an independent political corporation." Said Judge Proctor in the case of Monte v. Milat, 17 N.J. Super. 260 (Law Div. 1952):
"It is an established rule in the exposition of statutes that the intention of the Legislature is to be derived from a view of the whole and of every part of the statute, taken and compared together, and the real intention, when ascertained, prevails. Pine v. Okzewski, 112 N.J.L. 429, 433; 170 A. 825 (E. & A. 1934)." (Italics the court's.)
In this same case Judge Proctor cited Trustees of the Free Public Library of Newark v. Civil Service Commission, 83 N.J.L. 196, 83 A. 980 (Sup. Ct. 1912), affirmed 86 N.J.L. 307, 90 A. 261 (E. & A. 1914), and stated that in that case the decision was on the sole ground that the employees of the free public library were agents of the municipality, since they were in the paid service of the municipality, and were thus subject to the provisions of the Civil Service Act. He then went on to state:
"Moreover, a free public library, unlike a housing authority, is supported by funds raised by local taxation, and the money is appropriated annually by the local governing body."
While this reference and remarks are purely obiter dictum in the matter before Judge Proctor, they do indicate, as we have held, that all other matters being equal  creation, powers, duties and control  the deciding factor in determining whether the authority, board or commission is an agent of or adjunct to the county or the municipality, is the source of its support. If, as we stated in the matter of State of New Jersey, Department of Civil Service v. Parking Authority of the City of Trenton, 27 N.J. Super. 284, it subsists on tolls and not on taxes; if it is revenue-producing; if it does not depend on the State's or municipality's taxing *300 power to function  it is an autonomous, independent, public corporate entity. If, on the other hand, as in the case before us, the burden of supporting the commission or other body, is borne by the taxpayer, it may, insofar as its exclusive rights and powers go, be an independent political corporation, but it acts as the agent of and must be considered a branch of the governing body to which it must look for its subsistence.
Judgment for the plaintiff in accordance with the demands set forth in the amended complaint.