DEYESU *v.* MAYOR AND CITY COUNCIL OF BALTIMORE ET AL.

[No. 81, September Term, 1963.]

602

*Decided November 11, 1963.*

The cause was argued before BRUNE, C. J., and HAMMOND, PRESCOTT, HORNEY and SYBERT, JJ.

*Francis D. Murnaghan, Jr.,* with whom were *Venable, Baetjer & Howard* on the brief, for the appellant.

*Blanche G. Wahl, Assistant City Solicitor of Baltimore,* with whom was *George W. Baker, Jr., Deputy City Solicitor,* on the brief, for the appellees.

HAMMOND, J., delivered the opinion of the Court.

The appellant, in a continuation of his fight to keep his position as Deputy Director—Logistics Support of the Civil Defense Organization of Baltimore, seeks here to reverse the action of the Circuit Court of Baltimore City which rejected his principal contention that the Civil Service Commission (formerly the City Service Commission and hereinafter referred to as "the Commission") was without jurisdiction over his position and his alternative contention that the civil service examination given to test his qualifications for the position, which he flunked, was so unfair to him as the incumbent holder of the position as to be nugatory.

The Legislature by Chapter 563 of the Laws of 1949 [1] enacted the Maryland Civil Defense Act which, as part of its purpose and mechanics, provided for the creation of local civil defense organizations.

In 1951 Baltimore set about establishing such an organization. At first the organization used the services of persons who were on the payroll of existing City agencies. The appellant was appointed Administrative Assistant Relief and Rehabilitation—

---

1. The act was first codified as Sections 232 to 243 of Art. 41 of the Code. By Ch. 55 of the Laws of 1962 the sections were "renumbered and recodified" as Sections 1 to 12 of a new Art. 16A of the Code, titled "Civil Defense," said sections to be under the new subtitle "Maryland Civil Defense Act."

Civil Defense within the framework of the Department of Public Welfare of Baltimore, giving up the practice of law to accept the appointment. The Commission put the position within the exempt class of the classified civil service and, accordingly, waived the requirement of a written examination.

Soon after this the Civil Defense Organization of Baltimore became an actual separate entity. At the request of the Commission the City Solicitor gave an opinion which said that employees of the organization had a dual status in that "they are employees of the City in the sense that they are paid by the City and are employed by the Director of Civil Defense for the City with the approval of the Mayor and the Board of Estimates," but are employees of the State "in the sense that their employment is authorized by a statute of the State conferring 'emergency powers' upon the City to create a Local Organization for Civil Defense which, in turn, is a part of the State Civil Defense," and held that Baltimore civil defense employees did not come within the jurisdiction of the Commission.

In September 1951 appellant began to carry out his duties as part of the Civil Defense Organization, which paid his salary. In 1956 he was promoted to his present position. The Commission issued a "cut off ticket" evidencing the separation of appellant from the classified service.

In 1958 the Federal Congress enacted Public Law 85-606 (50 U. S. C. (Appx.) Sec. 2251, *et seq.*) making matching funds available to the States for the payment of administrative expenses of State and local civil defense groups. A requirement of the law was the establishment and maintenance of a federally approved local merit system for civil defense employees. Civil service agencies were required by the Office of Civil Defense Mobilization, Administrative Manual AM-25-2, Ch. 5.2, Sec. 3 (September, 1960), to prepare a plan of classification for all covered positions based upon an "investigation and analysis of the duties and responsibilities of each position," including appropriate titles, descriptions of duties, and requirements of minimum training, experience and other qualifications for the various positions. There could be no "blanketing in" of incumbents. Status could be earned only by means of open competitive or qualifying examinations.

Civil defense and civil service officials conferred with representatives of the Federal Government to work out the mechanics of compliance by the Baltimore Civil Defense Organization with the new national requirements. The City Solicitor, Mr. Winter (now Judge Winter of the United States District Court for the District of Maryland), was asked to reconsider the opinion of 1951, holding that the Commission had no jurisdiction over civil defense employees.

The City Solicitor replied that the opinion of 1951 was "not wholly in accord with other opinions of this office on similar questions," added that "as a matter of fact, the opinions of this office on the various aspects of the application of the Civil Service Law to given classifications of employees are not at all in harmony" (citing examples), and said that he, reluctantly, "considering the conflict of the opinions on similar subjects," felt "compelled to re-examine the matter in this instance." In the opinion, after examining Sec. 144 of the Charter and Public Local Laws of Baltimore City (1949 Ed.) (which provides that the Civil Service Commission "shall classify * * * all municipal offices and positions in the City to which appointments are made by any officer (other than the Mayor) who is, or may be, clothed by the Charter, or by any law or ordinance not inconsistent with the Charter, with the power of making appointments"), he pointed out that the functions of the Civil Defense Organization "are related to Civil Defense problems of Baltimore City," that its employees are paid by the City and are members of its pension system and that the City fixes the number of the employees. He found gratification of the second test of Sec. 144 (that appointment be by an official authorized by the Charter "or by any law" or by "ordinance not inconsistent with the Charter") in the fact that "the employees of the organization are appointed by the Director, who is authorized by Section 238 of Article 41 to make the appointments." He then observed that "in recent years the Courts have tended to be liberal on determination of the question of who is an employee of a given political subdivision for the purpose of inclusion within a merit system," citing *Horn v. Gillespie* (N. Y.), 196 N. E. 205; *Grobbel v. Board of Water Com'rs* (Mich.), 149 N. W. 675; and *State Dept. of Civil Service v. Clark* (N. J.

Super. Ct.), 99 A. 2d 386. The conclusion of the City Solicitor was "that the employees of the Civil Defense Organization are city employees for the purposes of the classified services."

The Commission then proceeded to classify each of the civil defense positions, except that of the Director, after receiving questionnaires filled in by the various jobholders, including the appellant, showing their duties and responsibilities. It then gave examinations prepared on the basis of job specification sheets which reflected the information on the questionnaires. The examination which the appellant and three other aspirants for his position took consisted of answering in writing one hundred twenty-five multiple choice questions. The examination was prepared by an employee of the Commission who specialized in such preparations and was considered to be a combined competitive and qualifying one, competitive because it was open to nonincumbents, and qualifying because incumbents were not required to have the minimum qualifications as to training and experience required by the job specifications and would automatically retain their positions if they made the passing mark of seventy, or better.

Approximately a fourth of the examination questions dealt with civil defense, a fourth with testing general analytical ability, a fourth with accounting, and a fourth with general principles and practices of business administration.

Appellant did not make the passing grade of seventy, answering correctly but sixty-five questions (fifty-two per cent). One other taker failed also, and two passed.

The Director of the Baltimore Civil Defense Organization, supported by the State Director, protested that the examination was unfair, mainly because it did not reflect the actual duties of the position and give weight to an incumbent's knowledge of those duties, and requested a reexamination.

The Commission held a hearing on the request, at which appellant (and five other civil defense employees who also had failed their examinations) was heard. The Commission sought the advice of the Federal Department of Health, Education and Welfare (which had furnished the substance of about half the questions) and of Federal Civil Defense Officials and were advised that the examinations in their opinions were fair and just.

The Commission, after it had reviewed the questions and the answers considered correct and after its chairman, as a check, had taken the examination (and passed with a mark of over eighty-five), concluded that no just cause existed for complaint about the fairness and appositeness of the test.

Appellant's arguments on his primary contention that the Commission was without jurisdiction over positions in the Civil Defense Organization are that such positions are neither municipal offices nor municipal positions in the City nor appointments authorized by the Charter or "any law" or ordinance consistent with the Charter.

The contention on the first point is that civil defense activities and operations are not confined to the City but are State-wide in concept, scope and effect. Reliance is on the statutory directions (a) for the rendering of mutual aid by local organizations; (b) that each local group is to be established "in accordance with the State civil defense plan and program"; (c) that the Governor, in event of widespread disaster may assume overall direction of activities; (d) that the Governor appoint each local director and alternate, under his general direction; and (e) that the State Director is to coordinate the activities of the local organizations.

The general rule is that a person may be a municipal officer although he is not appointed by a municipal official and has functions or responsibilities which, to some extent, concern the State. 62 C. J. S. *Mun. Corp.* Sec. 462; *Barnes v. District of Columbia,* 91 U. S. 540. The determinative factor is the nature of the duties involved. *Coleman v. Kansas City* (Mo.), 182 S. W. 2d 74; *Horn v. Gillespie* (N. Y.), 196 N. E. 205; *Grobbel v. Board of Water Com'rs* (Mich.), 149 N. W. 675; *State Dept. of Civil Service v. Clark* (Super. Ct. N. J.), 99 A. 2d 386 (the last three cases having been relied on in the 1961 opinion of the City Solicitor); *Ferdinand v. Moses,* 26 N. Y. S. 2d 382, aff'd 30 N. Y. S. 2d 842; *Attorney General v. Bond* (N. H.), 124 A. 553; *Trustees v. Civil Service Commission* (N.J.L.), 90 A. 261.

In the creation of the civil defense system the Legislature gave evidence that it was to be composed of local organizations under local direction and control, subject to statewide coordi-

nation by the Director. Sec. 233 of Art. 41 of the Code declared it to be a general purpose of the Legislature "to create a Maryland Civil Defense Agency, and to authorize the creation of local organizations for civil defense in the political subdivisions of the State * * *." A local organization is defined (Sec. 234 (b)) as one "created in accordance with the provisions of this subtitle by city, town, county, or other local authority * * *." Another general purpose (Sec. 233) was "to provide for the rendering of mutual aid among the political subdivisions of the State * * *," which would seem to connote local, largely autonomous, entities.

The Director for the State is to be appointed by and be responsible to the Governor. On the other hand, each local director under Sec. 238 must be recommended by the mayor or governing body of the political subdivision and is "subject to the direction and control" of the mayor or governing body "under general direction of the Governor."

The Legislature in express terms authorized the use of local funds to pay the expenses of local civil defense activities. The cases, some of which are cited above, stress that local payment of salary and local provision for pensions as well as local right to control the engaging of services are important criteria in showing local status of employees.

Appellant urges that because Baltimore civil defense employees in event of widespread emergency or disaster would aid refugees from other political subdivisions or go out to aid the counties, they should not be considered municipal employees. This possibility of service to others than local residents does not control. City firemen may go out to neighboring counties or even to other States in great emergencies, but they are and remain city employees. Baltimore City furnishes water to nearby subdivisions but employees of the Bureau of Water Supply whose efforts make this possible, often by work outside the City limits, remain municipal employees.

Appellant says that the word "law" referred to in Sec. 144 of the City Charter, under the authority of which an appointment must be made if the appointee is to be subject to the civil service provisions, must be a public local law. We do not find

such a restrictive meaning to have been intended. If the word "law" be construed to have been intended to mean the same as the words "ordinance not inconsistent with the Charter," the word was no more than surplusage, a meaning not to be accepted unless no other would be sensible or reasonable. If the phrase "any law" be read literally, it would mean any applicable public general law and the statute would mean an appointment authorized by the Charter or any public general law or any ordinance not inconsistent with the Charter, a sensible and reasonable reading.

Appellant, in support of his alternative contention, complains because of the small proportion of civil defense questions in the examination and because of the large proportion of accounting questions which he says were irrelevant (although in answering his questionnaire, on the basis of which job specifications and examination questions were prepared, he stressed that supervision of accounting practices and procedures of the agency was a substantial part of his job). The Commission felt the accounting questions were on the elementary rather than the difficult or advanced side of the line (and this conclusion would not seem to have been unreasonable). Appellant argues, too, that the examination in other respects was not only highly and unnecessarily difficult but theoretical, rather than practical, to the point of making it illusory as a test of ability for good actual performance. (Two of the four who took the examination and the Chairman of the Commission passed it. The allegation of the extent of theory and lack of practicality would seem to come down to no more than an assertion that appellant's judgment of an appropriate test was better than that of the Commission.)

All of appellant's complaints fall far short of showing bad faith—which indeed is not claimed—or arbitrary, capricious or illegal conduct on the part of the Commission.

The Courts have held that it is the function of the civil service agency to use the methods it deems best adapted for the determination of fitness for a position and even if reasonable men could differ as to the soundness and appropriateness of the scope and character of the examination the judgment of the agency must prevail and is not to be interfered with by the courts in the absence of proof of bad faith or arbitrary, capricious or illegal action. *Frishein v. Reavy,* 33 N. Y. S. 2d 894, aff'd by

the Court of Appeals of New York in 45 N. E. 2d 921; *Gollin v. Watson*, 102 N. Y. S. 2d 935; *Sloat v. Board of Examiners of Board of Education* (N. Y.), 9 N. E. 2d 12. We think there is no basis here for judicial interference with the Commission's judgment or actions.

The appellees suggested that even if it be assumed that the appellant was not a City employee and the Commission exceeded its jurisdiction in classifying his position, the matter is now moot and not a subject for the injunctive relief asked by the appellant because by amendment of Sec. 238 of Art. 41 of the Code, by Ch. 125 of the Laws of 1962, effective June 1, 1962, all employees of local civil defense organizations were included in and made subject to the merit system of such local subdivision. It is argued that it is settled law that an appellate court must decide a case according to the law in effect at the time of the decision even though it has been changed between the decision below and the decision on appeal, as was recognized by Chief Justice Marshall in *United States v. Schooner Peggy*, 1 Cranch 103, and that this rule is particularly applicable to cases of injunctions because the right of an injunction is a right *in futuro*, citing *Texas Co. v. Brown*, 258 U. S. 466; *Women's Club v. State Tax Comm.*, 195 Md. 16; and *Wade v. St. Mary's Indust. School*, 43 Md. 178.

We felt constrained to reject the suggestion of mootness and decide the case because the legality of the examination which brought about the termination of the right of appellant to continue in his employment was still at issue and the examination was given before the 1962 amendment under authority then claimed by the Commission under then existing law. If the Commission did not have the authority it purported to exercise by giving the examination, its action in giving it would have been without effect and appellant would still be legally employed, even though he failed it. Presently justiciable issues remained after the Legislature spelled out the authority of the Commission in 1962.

*Order affirmed, with costs.*