WHITTLESEY *vs.* THE HARTFORD, PROVIDENCE AND FISH-KILL RAILROAD COMPANY AND OTHERS.

Injunctions will be granted at the discretion of the court, and only for great and irreparable injuries, and where adequate relief can not be had at law.

The plaintiff, and his nine brothers and sisters, were the owners in fee, in equal proportions, of two pieces of land, subject to the life-estate of their father. In September, 1848, the plaintiff mortgaged his interest therein to D, one of his said brothers, and in December, 1852, D executed to him a release of the same. In April, 1849, the New York and Hartford Railroad Company located a portion of their road across said pieces of land, and said location, having been submitted to the commissioners and notice given to all the owners, including the plaintiff, was approved in the same month. Said company afterwards made application to the superior court, for the appointment of appraisers of the damage done by taking said land, and gave notice thereof to all persons interested therein, except the plaintiff, who was omitted,

in consequence of a mistake as to his interest in the same. In May, 1849, three freeholders, who were appointed for that purpose, assessed the damages of the respondents in said application, as follows: to D, $164.65; R, $15; S, $10; and to the other seven, five cents each, being $190 in the whole. Said amount was intended, by said appraisers, to be the full value of all the damages, occasioned by taking said land, and the same was deposited by the company according to the requirements of their charter, with the treasurer of the county, and was afterwards paid over to the parties to whom it was assessed, except the assessment of five cents, which remained on deposit for the use of the parties to whom it was assessed. For the purpose of making an equitable distribution of the whole amount, so assessed, D afterwards voluntarily shared with his brothers and sisters, including the plaintiff, the amount of his assessment, in such manner as to make all their shares equal, deducting nothing from the plaintiff's share on account of said mortgage. In November, 1851, the whole of said two pieces of land, except what had been so taken by said company, and the mortgaged interest of the plaintiff, became vested in the plaintiff and his two brothers, W and E. In July, 1849, in pursuance of a resolve of the general assembly, the New York and Hartford Railroad Company was merged in the Hartford, Providence and Fishkill Railroad Company. The plaintiff, having remained silent for more than two years from the time said land was taken, and until after said road was completed, although he knew of the progress of its construction, brought a bill in equity against said Hartford, Providence and Fishkill Railroad Company, and W and E, praying for an injunction against the use of said land by said company. The committee to whom the cause was referred, found that the damages to the plaintiff's interest in said land, including the use of the same, estimated according to its value at the time of taking it, would be $40; estimated according to its present value, $50; and that the injunction, if granted, would produce great injury to the company, and inconvenience to the public. Held 1. That the court exercised a sound discretion in refusing an injunction for an injury so trivial, when, if granted, it would be productive of so much damage to the principal defendant. 2. That the reception, by the plaintiff, of the company's money, and his subsequent silence, in relation to any claim on his part, was a waiver of any irregularity in the appraisal of said land. 3. That the franchise of the New York and Hartford Railroad Company had been merged in the Hartford, Providence and Fishkill Railroad Company.

Where such bill alleged that the plaintiff and his brothers and sisters, as the heirs at law of their mother, were the owners of the land in question, and that the company had never made him any compensation for his interest therein; and it was alleged, in the answer of the company, that all the damages, arising from taking the same, with the exception of thirty-five cents, were paid over to the heirs of said R, of which the plaintiff was one; and the committee, to whom the cause was referred, found that D voluntarily divided the sum, awarded to him, among his co-heirs, for the purpose of making an equitable distribution; it was held, that such finding was consistent with said allegations.

THIS was a bill in chancery, setting forth that the plaintiff was the owner of three undivided tenth parts of two certain pieces of land, situated in the town of New Britain, over which the railroad company had constructed their road which they were using, without ever having caused the plaintiff's interest therein to be appraised, or any damages paid to him, for the land taken by the company, and praying for an injunction against the further use of the land, by the company for railroad purposes. William Whittlesey and Eliphalet Whittlesey, the other co-tenants, were made defendants.

The bill, and the several answers of the defendants, were referred to a committee, whose report embraced the following facts.

The plaintiff and his nine brothers and sisters, as children and heirs at law of their mother, Rebecca Whittlesey, deceased, were owners in fee, in equal undivided proportions, of the two pieces of land described in the bill, subject to the life estate of their father, David Whittlesey, therein, as tenant by the curtesy; and, on the 20th day of September, 1848, the plaintiff mortgaged all his interest in the two pieces of land, of the value of $1,000, to his brother David W. Whittlesey, to secure the payment of a promissory note for the sum of $300; and the said David afterwards, on the 31st day of December, 1852, gave back to the plaintiff a release deed of the property, so mortgaged.

By virtue of several deeds, executed between September 20, and November 1, 1851, the whole of said two pieces of land, except such part as had been taken by the railroad company, as hereinafter stated, and the interest of the plaintiff mortgaged as aforesaid, became vested in the plaintiff, and his two brothers, William and Eliphalet, defendants in the suit ; the plaintiff owning three undivided tenth parts.

On the first of April, 1849, the New York and Hartford Railroad Company, in pursuance of their charter, laid out, and located, a portion of their road, across the said two pieces of land, taking about two acres of the same. The

directors of the company submitted such location to the commissioners, for their approval, and caused due notice to be given to all the parties interested, including the plaintiff, and such location, on the 24th day of April, 1849, was, by the commissioners, duly approved, none of the persons interested in the land, appearing before them.

The directors of the company, afterwards, made an application to the superior court for the appointment of appraisers, and gave due notice to all the persons interested in the land, except the plaintiff, to appear, and be heard therein. The omission to make the plaintiff a party to that proceeding, was in consequence of the mistake and misapprehension of the company, as to his title, they having been informed, by the town clerk, that he had conveyed away his entire interest in the property, and they were unaware of their mistake, until a claim was made upon them by the plaintiff, in September, 1851.

The superior court thereupon appointed three freeholders to assess the damages done to the respondents in said application, who accordingly, on the 24th day of May, 1849, assessed to them damages as follows: to David W. Whittlesey $164.65, David Whittlesey $15, Sarah T. Whittlesey $10, and to the other seven respondents 5 cents each, the whole amounting to $190, and made return of their assessment to the superior court.

The sum of $190, assessed as aforesaid, was considered and intended by the appraisers to be the full amount of the whole value of the land, taken by the company, and of all damages occasioned thereby, and in the distribution of the amount among the several owners, they acted under a misapprehension, as to their legal and equitable interests.

The plaintiff, at that time, was the owner of one undivided tenth-part of the two pieces of land, subject to the life estate of his father, and his mortgage to his brother; but no notice was taken of his interest, and no damages were assessed to him.

David W. Whittlesey was in the actual possession of the land, as tenant from year to year, and so continued, until the company entered upon the part by them taken. Daniel Whittlesey, the father, died July 21, 1851, at the age of seventy-six years.

The sum of $190, assessed as aforesaid, was afterwards duly deposited with the treasurer of the county of Hartford, agreeably to the directions contained in the charter of the company, and was paid over to the parties, to whom the same was assessed, and accepted by them, with the exception of thirty-five cents, the amount of the five cent assessments, which sum still remains in the treasury, for the use of the parties, to whom it was assessed.

David W. Whittlesey afterwards voluntarily shared with the other joint owners, including the plaintiff, the sum so assessed to him, in such manner that the owners of each tenth part received an equal amount, no deduction being made from the plaintiff's share, on account of his mortgage; and the division was so made by the said David W., for the purpose of an equitable distribution of the whole amount, so assessed, among the parties interested.

From the time the lands were taken as aforesaid, until the 16th day of September, 1851, a period of more than two years, the plaintiff made no claim of title to the land taken by the company, or any compensation therefor; and although he resided in a distant part of the state, yet he knew the progress of the construction of the road, and that the company were expending large sums of money thereon.

On the 23d day of July, 1849, the New York and Hartford Railroad Company was united with, and merged in the Hartford and Providence Railroad Company, and the two companies have since been known as the united company, under the name of the Hartford, Providence and Fishkill Railroad Company, which has thereby succeeded to, and become possessed of all the property, right, interest and estate of the New York and Hartford Company, according

to a resolve of the general assembly, amending the charter of the Hartford and Providence company, passed in May, 1849.

If the injunction prayed for should be granted, it would produce great injury to the company, and inconvenience and loss to the public, of the important facilities furnished by the road for travel and transportation.

The committee found, that the damages done to the plaintiff's interest in the land, including the use of the same, estimated according to its value at the time of taking the same, would be $40, but, if estimated according to its present value, they would amount to $50.

The superior court, at the January term, 1855, accepted the report of the committee, found the facts therein stated to be true, and dismissed the bill. The case was brought before this court, by a motion in error.

*Fellowes*, for the plaintiff.

1. The superior court had no jurisdiction as to the plaintiff, because he was not a party, and had no notice, and had no jurisdiction at all, because the act of incorporation confers no power to sever the joint interests, and to assess separate damages; in other words, to determine the value of the shares of the copartners, and to determine their mutual rights and estate. *Ross* v. *Elizabethtown and Somerville R. R. Co.*, 1 Spencer, 230. *Railroad Co.* v. *Beecher*, 1 Watts, 33–35. *Merrill* v. *Inhabitants of Berkshire*, 11 Pick., 269. It follows, therefore, that as the amount of damage to which each coparcener is entitled, depends on the total damage done to all, each one must be a party, and notified, before the court, or appraisers, have any jurisdiction. If the appraisers can assess separate damages, still all the owners must be made parties, and notified, before they have jurisdiction. The appraisers, in assessing separate damages, exceeded their jurisdiction, and therefore their acts are void. The assessment is not an assessment of the entire damage to all, in effect, and the ap-

praisers have done what they had no authority to do.   The case is therefore within the principle, that where a special limited authority is exceeded, the act is void.   But if the court, and appraisers, had jurisdiction, and did not exceed it, still their doings ought to be set aside for material mistakes and errors.   (1.) Because of the inequality of the assessment, without reason, and (2.) because the assessment was so inadequate, being not half of the actual damage.

2. If the New York and Hartford Company had a good title, whether the legislature could or could not vest that title in another distinct corporation, by its mere sovereign power, depended on the extent and nature of the franchise.   If the right be personal, and not transmissible, the legislature could not vest it in another corporation, without a new assessment and compensation.   This inference is inevitable.   Constitution U. S., art. v., p. 23.   Constitution Conn., § 11, p. 29.

3. The proper relief is a perpetual injunction.   (1.) Because the injury is irreparable, and, (2.) because, if it were not irreparable, the company are exceeding their jurisdiction.

4. As to the acquiescence claimed by the defendants, there was no concealment of title, and it was on record.   The plaintiff gave notice of his claim to the defendants, as soon as he came into possession, two months after the termination of his father's life estate.   The plaintiff had no power till then, to keep the defendants from the land.   His father had the right of possession.   Moreover, the company have power to obtain the right, by appraisement, but they have utterly neglected to take any steps to procure the title.

5. As to the question of evidence stated by the committee. The committee find matters not referred to them.   The only matters referred to them, are the facts put in issue by the pleadings.

*Hungerford & Cone*, and *Bulkeley*, for defendants.

1. An application for an injunction is addressed to the sound discretion of the court, and the court will not grant it,

as matter of right, or without good and satisfactory reasons therefor.

2. If there was any defect in the proceedings of the appraisers, which is denied by the defendants, the plaintiff has waived such defect, by receiving and retaining his proportion of the money, at which the land was appraised, and it is proper to have the interest of each assessed separately. 4 Eng. Rail. Ca., 616. 5 Eng. Rail. Ca., 263.

3. The plaintiff has lain by, for a period of two and a half years, and during all that time, witnessed the operations of the company, and their expenditures in the construction of the road, and has forfeited, if he ever had, any claim to equitable relief, and especially to an injunction. 1 Eng. Rail. Ca., 120. *Greenhalgh* v. *Man. & Bir. R. W. Co.,* 1 Railway Ca., 68. *Attorney General* v. *Man. & Leeds R. W. Co.,* 1 Eng. Rail. Ca., 436. *Illingworth* v. *Man. & Leeds R. W. Co.,* 2 Eng. Rail. Ca., 194. 3 Mylne & Craig, 748. *Rochdale Land Co.* v. *King,* 7 Law & Eq. R., 208. *Ten Eyck* v. *Simpson,* 5 John. Ch. R., 184.

4. The court, in the exercise of its discretion upon the subject of granting an injunction, will look to the probable consequences of granting or withholding it, to the respective parties, and if the damage occasioned by granting it, would be very serious to one, and by withholding it, small to the other, the court will withhold it. *Attorney General* v. *The Eastern R. W. Co.,* 3 Rail. Ca., 337. *Langford* v. *Brigton R. W. Co.,* 4 Eng. Rail. Ca., 69. *Rigley* v. *Great West. R. W. Co.,* 1 Cooper's Cases, Temps. Cottingham, 96.

5. In regard to things devoted to public use, the court will consider the inconvenience to the public, if the injunction is granted. *Spencer* v. *London & Bir. R. W. Co.,* 1 Eng. Rail. Ca., 159. *Hilton* v. *Granville,* Craig & Philip, 297. *Carey* v. *Yarmouth R. W. Co.,* 3 Hare, 593. 2 Eng. Rail. Ca., 812.

6. The New York and Hartford Railroad Company lawfully conveyed their franchises to the Hartford, Providence and

Fishkill Railroad Company, which lawfully became vested with the same. (1.) The charters of both companies were subject to alteration, amendment and repeal, by the general assembly, at their election. (2.) The franchise granted to the New York and Hartford Railroad Company, consisted in the liberty and authority to take the land, construct the road, and use it, during the continuance of the franchise, and that might continue always, unless repealed by the legislature, or declared forfeited by the proper court, upon a *quo warranto.* (3.) Admitting the land to have been property, the right was taken to use the land for a period of time, commensurate with the duration of the franchise, inasmuch as the right to use the land for the purposes of the road, and the franchise, are words of synonymous import. (4.) Neither the union and merger of the rights of the New York and Hartford Railroad Company in the Hartford, Providence and Fishkill Railroad Company, nor the authority given for that purpose by the legislature, constitute any extinguishment, or any resumption of the franchise. The authority to merge, and an execution of that authority, was, in effect, no more than an authority to the New York and Hartford Company, to assign the franchise to the Harford, Providence and Fishkill Company, and an assignment made in conformity with that authority. *Harrison and wife* v. *Lexington & Frankfort R. R. Co.,* 9 B. Monroe, 470, a very pertinent authority. Law Magazine, vol v., p. 286, *et seq. Troy and Rutland R. R. Co.* v. *Ken,* 17 Barb., 581. *Forward* v. *H. & H. Canal Co.,* 22 Pick., 462. *Chase* v. *Sutton Manufac. Co.,* 4 Cush., 152. *Benedict* v. *Goit,* 3 Barb. Sup. Ct. R., 459. 5 Eng. Rail. Ca., 263.

7. Although the bill prays for an account from the defendants, as tenants in common with the plaintiffs, the claim has not been hitherto insisted upon, on trial, and we presume it will not be hereafter. Should it be, we refer the court to *Weston* v. *Foster,* 7 Metcalf, 297. 5 Eng. Rail. Ca., 263. 9 Smedes & Marshall, 294, 431.

WAITE, C. J. Jurisdiction, in matters of equity, was conferred upon the courts in this state, with very great hesitancy, on the part of the legislature. For more than a century after the organization of our government, that power was retained and exercised by the general assembly. And when it was finally conferred upon the courts, it was done with very great caution. It was not given to any chancellor or separate tribunal, erected for the purpose, but to the courts as then constituted.

The very first act, upon that subject, limited the jurisdiction of the highest court to cases, where the matter in demand did not exceed one hundred pounds, to be exercised only *where remedy was not to be had at law.* And even that act was to continue in force only for a period of three years. Gradually, however, jurisdiction in all matters of equity was conferred upon the courts, and, by a recent statute, is now vested entirely in the superior court.

The grant of this power was accompanied with an important provision, that the courts, in the exercise of it, should proceed according to the usage of the general assembly in such cases. Hence arose the practice of referring cases in equity to committees, to find and report, not the evidence in the case, but the facts; in other words, how far the allegations in the bills and answers are true.

This practice has many advantages over that which prevails in England, and in most of our sister states. It renders proceedings in equity less voluminous and expensive to the parties, and enables those, who hear the witnesses, to determine the degree of credit to be given to their testimony.

The report is very much like a special verdict found by a jury, and when accepted, it becomes the duty of the court to apply the law and determine what decree shall be made.

In conformity with the practice which prevailed in the general assembly, it is competent for the court itself to hear the evidence, and make the finding, or refer it to a committee for that purpose. But a finding, in one of those modes, is

essential to the foundation of a decree. The statute says, "Courts of equity shall cause the facts on which they found their decrees, to appear on record." Statutes, 1854, p. 471.

This enables either party, if dissatisfied with the decision, to have the case reviewed, by writ, or motion in error, as was done in this case.

This great caution on the part of the legislature, in conferring the power, requires a corresponding caution, on the part of the courts, in the exercise of it, that the fears, formerly entertained that it might be abused, may not be realized.

It has been holden that the law of congress, providing "that suits in equity shall not be sustained in either of the courts of the United States, in any case, where plain, adequate and complete remedy may be had at law," is merely declaratory, making no alteration in the rules of equity, on the subject of legal remedy. *Boyce's Executors* v. *Grundy*, 3 Pet., 215.

This may be true of that law, embraced in an act, creating the courts, and defining and limiting their powers. But the same construction has not been given to our law. Thus, in a suit in equity, calling for an account from the defendant, a former guardian of the plaintiff, Daggett, C. J., remarked, "In my judgment, the plaintiff has adequate remedy at law, and if so, the superior court is prohibited by express legislative enactment from holding jurisdiction," and the bill was dismissed. *Stannard* v. *Whittlesey*, 9 Conn. R., 559.

Perhaps the most useful and important branch of equity jurisdiction is that relating to the granting of writs of injunction, and at the same time, it is one most liable to be abused, and perverted to purposes of extortion and oppression.

For an illustration of the correctness of that position, we need but look at the facts, found by the committee in the present case. The plaintiff and his nine brothers and sisters were the joint owners of two pieces of land, under the incumbrance of the life estate of their father, and even the

plaintiff's interest in the property was mortgaged to a brother, to secure the payment of a note of much greater amount, than the value of all his interest.

Across these two pieces of land, the railroad company located their road, and, for that purpose, took about two acres of the land. They then applied to the superior court, for the appointment of appraisers to assess the damages done to the owners. All of them were duly notified, with the exception of the plaintiff, whose name was omitted in the citation, through mistake, in consequence of information from the town clerk, that he had conveyed away all his interest in the property, instead of giving a mortgage of the same.

The appraisers assessed the whole damages done to the owners, at the sum of one hundred and ninety dollars, and apportioned that amount among the other proprietors. According to that valuation, the plaintiff's share, at most, could not have amounted to the sum of twenty dollars. He remains silent for a period of more than two years, and until after the company have completed their road.

He now calls upon the court to enjoin the company against the use of their road, over the land, in which he had an interest, simply because that interest has not been legally taken. This, as the committee have found, and as all must see, can not be done without great injury to the company, and serious loss and inconvenience to the public, in being deprived of the railroad facilities, furnished by the company. It probably would be more for their interest to pay the plaintiff ten fold, or even an hundred fold, the amount of his share of the damages, according to the assessment of the appraisers, than have their operations stopped, in the manner prayed for in the bill.

We will not say that the plaintiff, in applying for an injunction, intended thereby to take an undue advantage of the company, and extort from them unreasonable damages, as no such fact has been found. Yet it is perfectly obvious, that a decree to that effect would place the company in a situation, in which they must either submit to such terms as

the plaintiff might exact, or to great loss and damage in their business.

" An injunction," says Hosmer, C. J., " is not *en debito justitiæ*, for any injury threatened or done to the estate, or rights of a person, but the granting of it must always rest in sound discretion, governed by the nature of the case." *Enfield Toll Bridge Co.* v. *Conn. River Co.*, 7 Conn. R., 50.

Were then, this the whole case, we should be of opinion, that the superior court exercised a sound discretion, in refusing an injunction, for an injury so trifling, when, if granted, it would have been productive of so much damage to the principal defendants. It was better, far better, to leave the plaintiff to his remedy at law, by action of trespass, or eject-ment, as the facts might require.

Indeed, in one of our earliest reported cases upon this subject, a decree of the superior court was reversed, because the plaintiff had an adequate remedy at law, by an action of ejectment. *Willet* v. *Overton*, 2 Root, 343.

And we take this occasion to say, that writs of injunction are not to be granted for every trifling cause, nor made substitutes for every action of trespass or ejectment. When wisely and cautiously granted, they may be rendered highly beneficial; but they are not to be so used as to impose harsh and oppressive restraints upon the liberties of the people, and thereby rendered odious in public estimation. They ought not to be issued, except for the prevention of great and irreparable mischief, and, in the language of our present statute, in cases only, in which adequate relief can not be had in the ordinary course of law.

But, upon another ground, the decision in the court below can be vindicated. The plaintiff has no equity. The principal objection to the validity of the assessment of damages, is the want of notice to him to appear and be heard relative to the appointment of the appraisers, and their assessment.

But this omission to give the plaintiff notice, was by mere mistake, arising from wrong information from the town clerk,

relative to the plaintiff's title. The appraisers, acting under the belief that the property belonged to the other owners, assessed all the damages occasioned by the location of the road, and apportioned the whole amount among them. And this amount was paid to the treasurer of the county for the use and benefit of the owners.

There was, indeed, through some mistake, an unequal apportionment of the damages, which probably a court of chancery, upon a proper application, would have corrected. But David W. Whittlesey, to whom the greater share of the damages was awarded, as an honest man, voluntarily divided his share among all his brothers and sisters, including the plaintiff, in such manner, as to make all their shares equal.

The plaintiff, having thus received his full share of the damages awarded to the owners of the land, suffers the company to go on for a period of more than two years, building their road, and putting it in operation, without objection or claim for further compensation. It is true, for the principal part of that period, the property was under the incumbrance of his father's life estate, but it is found that he knew what the company were doing, and could, at least, have given them notice that he claimed an interest in the land, which had not been legally taken.

Under these circumstances, the reception by the plaintiff of the company's money, and his subsequent silence in relation to any claim on his part, must be considered as *a waiver* of any irregularity in the proceedings relating to the appraisal. It is too late now for him to say, that he had no notice of the time and place for the appointment of appraisers, or of making their award, when he has accepted his share of the damages, by them awarded, and suffered the company to go on with their road in the same manner, as if everything had been legally and satisfactorily done.

Had the appraisers assessed to him his share of the damages, and had it been paid to him, as such, by the company, no question could arise but that he would be estopped from

making the present objection. But it can make no difference, whether the damages were paid directly to him by the company, or indirectly, through the medium of the county treasurer, and his brother. It is enough that he has received their money, as his share of the damages.

It is further said, that the assessment is void, because the damages were awarded to the proprietors severally, and not jointly, and were not apportioned according to their respective interests.

As to the mistake in the apportionment, as we have already said, it might have been corrected upon a proper application to a court of chancery. But the necessity for such an application was removed by the voluntary action of the proprietors, in making the division, as it should have been made.

Whether it was the duty of the appraisers to have assessed the damages jointly, or severally, it is unnecessary for us to enquire. Because, if there were any irregularity in that report, or in the apportionment, the proprietors have waived it, by receiving the damages awarded, and suffering the company to go on and build the road, and treat the right of way as legally obtained. To permit them now to retain those damages and recover back the land, would clearly be inequitable and unjust, and would operate as a fraud upon the company.

By an act of the general assembly, passed at their May session, in 1849, the New York and Hartford Railroad Company was united with, made part of, and merged in the Hartford and Providence Railroad Company, and the two companies constituted one united company, under the name of the Hartford, Providence and Fishkill Railroad Company, one of the defendants in the present suit.

It is claimed that the franchise of the first mentioned company was not assignable, and that consequently the last named company acquired no title thereto. But there is no just foundation for this claim. It is a very common practice

for railroad companies to mortgage their roads, and all their franchises, to secure the payment of their bonds; and such bonds, to the amount of many millions of dollars, are now holden by creditors, relying for their security upon the mortgages given by the corporations.

And who ever heard it claimed that such mortgages were void, and that the mortgagees could acquire no right to the use of the road, without a new assessment of damages? And if a corporation can mortgage its road, why not transfer it directly? The assignee can acquire no greater interest than the corporation had; but we see no reason, why all that it possessed may not be assigned.

But in the present case, the New York and Hartford Railroad Company has not been annihilated, but merged in, and united with another company, and the two made one company, with a new name. This union does not affect the rights of either company, nor do we see how the land owners are injured by the union. Their land is to be used only for the purpose for which it was taken, and whether used by the original company, or their assignees, can make little difference with them.

Again, it is said that the committee and the court have found facts not put in issue by the pleadings. They have found that David W. Whittlesey voluntarily divided the sum awarded to him, among his co-heirs, for the purpose of making an equitable distribution, when no such matter was in issue.

The plaintiff, in his bill, alleges that he and his brothers and sisters, as heirs of their mother, were the owners of the land, and that the company had never made him any compensation for his interest. The company, in their answer, say that all the damages, with the exception of the thirty-five cents, were paid over to the heirs of the said Rebecca, of whom he was one. The report merely specifies in what manner the payment was made, and is therefore consistent with the allegations.

It is finally said that the court erred in dismissing the bill

without passing a bill in form. But the court found the facts, set forth in the report, to be true, and thereupon dismissed the bill. This is in conformity with our practice, and is all the law requires.

In our opinion, therefore, there is no error in the decree of the superior court.

In this opinion the other judges concurred.

Decree affirmed.