ALEX LUKACHIK *v.* STEPHEN JANKURA ET AL., CIVIL
SERVICE COMMISSION OF THE CITY OF
BRIDGEPORT, ET AL.

SUPERIOR COURT      FAIRFIELD COUNTY      FILE No. 123481
AT BRIDGEPORT

Memorandum filed January 4, 1966

*Marsh, Day & Calhoun,* of Bridgeport, for the plaintiff.

*Hugh C. Curran* and *John J. McGuinness,* of Bridgeport, for the defendants Jankura, Gerte, Barrett, Kershner, Hunerkopf, and Linley.

*Trager, Kleban & Trager,* of Bridgeport, for the defendant Rosenberg.

PALMER, J. In 1935 the legislature established by special act a civil service system for the city of Bridgeport. 22 Spec. Laws 261. It (§ 1) provided for the establishment of a civil service commission. At all times here in question the defendants Stephen Jankura, Robert C. Gerte, Thomas J. Barrett, Leonard B. Kershner and Robert Hunerkopf were all the members of the civil service commission. Section 2 of the special act provided for the appointment of a personnel director by the civil service commission. It required that he "shall be thoroughly familiar with the principles and methods of personnel administration and skilled therein and shall have had at least three years of successful experience as director or assistant director in the administration of an employment system involving at least five hundred positions or employees. He shall direct and supervise the administrative work of the personnel bureau and perform such other functions as may be required of him by the civil service commission." The defendant John J. Linley has held the position of personnel director since 1946.

The special act (§ 5) further provided that the "personnel director shall: . . . (6) provide for, formulate and hold competitive tests to determine the relative qualifications of persons who seek employment in or promotion to any class of position and as a result thereof establish employment and re-employment lists for the various classes of positions; . . . ." 22 Spec. Laws 262–63.

The special act (§ 9) further provided as follows: "The personnel director shall, from time to time, as conditions warrant, hold tests for the purpose of establishing employment lists for the various positions in the classified service. Such tests shall be public, competitive and open to all persons who may

be lawfully appointed to any position within the class for which such examinations are held . . . . All tests shall be practical, and shall consist only of subjects which will fairly determine the capacity of the persons examined to perform the duties of the position to which appointment or promotion is to be made . . . . No questions which are misleading or unfair or in the nature of catch questions shall be asked . . . . From the return and report of the examiners or from tests by him, the personnel director shall prepare a list of eligibles for each grade of the persons who shall attain such minimum mark as may be fixed for the various parts of such test, and whose general average standing upon the test for such position is not less than the minimum fixed by the rules of the commission, and who may lawfully be appointed." 22 Spec. Laws 264–65.

The civil service commission has adopted and promulgated certain rules, of which rule 3 provides in part as follows: "1. All examinations shall be public and shall be practical in character and relate to such matters as will fairly test and determine the relative fitness and ability of persons actually to perform the duties of the class or position to which they seek appointment or promotion. Experience and education of applicants may be investigated and/or evaluated. Any tests or combination of tests may be employed which serve to establish the ends described in this paragraph. 2. The commission shall determine what prerequisite qualifications of experience, education, training or otherwise must be possessed by any applicant before he will be eligible to compete in the examination for any class of positions, except that of teacher. . . ."

On March 2, 1964, the common council of the city of Bridgeport established the position of director of community facilities in order to administer

Klein Memorial, John F. Kennedy Stadium, Pleasure Beach Ballroom, Burr Creek Marina, and the proposed Jasper McLevy Music Shell. The common council left it to the civil service commission to decide whether the newly created position shall be "in the competitive or noncompetitive division." After holding a public hearing on this question, the civil service commission voted on August 3, 1964, to place the new position in the competitive division, and approved specifications in regard to the position. Characteristic duties were described as follows: "Managerial work of a difficult and responsible nature in managing and promoting amusement, sports and entertainment facilities of the City of Bridgeport; performed under administrative direction; related work as required."

The civil service commission published a legal notice, announcing an open, competitive examination for the position, in which the duties above mentioned were set forth and which also stated the following: "Is responsible for the physical maintenance and successful operation of such facilities as those at the Pleasure Beach Ballroom, Klein Memorial Auditorium, John F. Kennedy Stadium and the City Marina; directs and supervises the operation of characteristic ballroom, auditorium and stadium activities; writes out advertisements and news releases; works out promotion schemes; books bands, shows and other attractions; takes care of rentals; assures necessary safety inspections; procures licenses as necessary; arranges for proper insurance coverage; keeps records and makes reports; makes bank deposits of box office receipts; and other related duties."

On or about November 14, 1964, the personnel director held a written examination for the position of community facilities director. The examination

was taken by the plaintiff, the defendant William Rosenberg and five other persons. The personnel director subsequently found and determined that only one person out of the seven taking the examination, namely, the defendant Rosenberg, had passed the examination, and that he was the only one of the seven to qualify for appointment to the position of community facilities director.

Section 10 of the special act provides that the "personnel director may . . . refuse to certify the name of an eligible for employment who is found to lack any of the established qualification requirements for the position for which he applies or for which he has been tested . . . . Any such person may appeal to the civil service commission from the action of the personnel director . . . ." 22 Spec. Laws 265–66. Under date of February 19, 1965, the plaintiff wrote the civil service commission a "letter of appeal," copies of which were sent to the daily papers in Bridgeport, setting forth various claims of the plaintiff in regard to the examination. On March 9, 1965, the commission, one member abstaining, voted to deny the plaintiff's appeal.

As of October 26, 1965, the date of the trial of this action, no city board or department had been named or designated as the appointing authority having power and control over an appointment to the position of community facilities director, and as of said date the personnel director had not certified the name of any person eligible for appointment to any appointing authority.

In the complaint in this action, the plaintiff charges that the defendant personnel director illegally held the examination in violation of the special act and rules of the commission "in that said examination was not practical in character and

did not relate to such matters as would fairly test and determine the relative fitness and ability of persons, including the plaintiff, actually to perform the duties of the position of Community Facilities Director." The plaintiff further charges in his complaint that the examination "contained questions which were misleading and unfair and did not properly measure the ability and experience of the applicants, including the plaintiff, all in violation of said . . . [special act]."

The plaintiff in his brief says: "Specifically, the plaintiff claims that the test did not fairly test and determine the relative fitness and ability of persons to perform the duties of the position, and that it contained questions which were misleading, unfair and did not properly measure the ability and experience of the applicants." Not contained in the complaint, but first set forth in plaintiff's brief, is the contention "that the examination had been improperly graded and corrected and that it contained errors and omissions," and "that a fair reading of [the] testimony [of the personnel director] indicates that in many instances he used subjective rather than objective standards in compiling this test and in grading the answers."

The defendant Rosenberg in his brief points out that in the above-mentioned appeal to the civil service commission the plaintiff claimed that two questions, namely, 36 and 92, were ambiguous, whereas in this action he is complaining of more than twenty additional questions. "When an administrative remedy is provided by law, relief must be sought by exhausting this remedy before resort to the courts." *McNish* v. *American Brass Co.*, 139 Conn. 44, 53. As to the plaintiff's complaints in respect to questions other than 36 and 92, the plaintiff cannot be said to have exhausted his administrative remedy,

and he therefore is not entitled to have his claim in regard to such questions considered by the court. As to questions 36 and 92, of which the plaintiff did complain in his appeal to the civil service commission, the plaintiff has failed to show or establish that if these two questions were eliminated, or even regarded in his favor, he would have attained a passing grade. Accordingly, the plaintiff is not entitled to any relief by reason of the questions contained in the examination.

In the event the decision of the court in respect to questions other than 36 and 92 is reversed on appeal, the court has decided to consider the plaintiff's claims in respect to such questions. These claims must be judged in the light of a number of settled principles of law, which are hereinafter set forth.

"In the administration of civil service, administrative boards and officers should be allowed to work out their problems with as little judicial interference as possible, and an abuse of discretion must clearly appear before the courts will interfere." 15 Am. Jur. 2d 506, Civil Service, § 45. "The determination of examiners conducting tests of a candidate for appointment or promotion in the civil service of the state is reviewable by the courts only so far as is necessary to determine whether the examiners acted arbitrarily and without application of measures or standards which are sufficiently objective to be capable of being challenged and reviewed when necessary by other examiners of equal ability and experience." Id., 507. However, "the fact that standards for determining whether a candidate has set certain tests cannot be defined with entire objectivity does not render the test at variance with the statutory or constitutional requirements." Id., 484, § 22.

From the foregoing, and the cases cited therein, it is very clear that the courts are extremely reluctant to interfere with the functioning of an administrative body such as the civil service commission of the city of Bridgeport, so long as the commission is carrying on its business and affairs in a fair and reasonable manner. Our courts cannot constitutionally perform administrative duties. *Curry* v. *Civil Service Commission,* 125 Conn. 344, 346 n. Furthermore, our courts are lacking in the expert skills and knowledge required to perform such duties. "The Courts have held that it is the function of the civil service agency to use the methods it deems best adapted for the determination of fitness for a position and even if reasonable men could differ as to the soundness and appropriateness of the scope and character of the examination the judgment of the agency must prevail and is not to be interfered with by the courts in the absence of proof of bad faith or arbitrary, capricious or illegal action." *Deveau* v. *Baltimore City,* 232 Md. 601, 610. "To be competitive, the test must employ an objective standard or measure susceptible of challenge and review, where necessary, by other examiners of equal ability and experience. Since complete objectivity is impossible, reasonable evaluation is sufficient, but the test should be uniform in application to all candidates, reliable, and as objective as possible." 3 McQuillin, Municipal Corporations (3d Ed. Rev.) § 12.78, p. 347. As the New York Court of Appeals said in *Matter of Sloat* v. *Board of Examiners,* 274 N.Y. 367, 373, in regard to examinations: "Exact definition of the qualities which are essential or desirable may be impossible; exact formula or standard by which such qualities may be measured has never been achieved; mechanical application of any standard is certainly not practicable. Much must be left here to the judgment of

the examiners. The test cannot be wholly objective and to the extent that it is subjective the result may depend as much upon the fitness of the examiners as upon the fitness of the candidate. That is a risk inherent in all systems of examination."

The plaintiff specifically attacks a total of 28 of the 100 questions contained in the examination. The court is frank to say that it does not feel qualified or equipped by education, training, experience, or otherwise, to determine the "best" answer to many of the questions cited by the plaintiff, or to many of the questions not here complained of. Nevertheless, the court is not prepared to say that these questions, or the answers deemed "best" by the defendant personnel director, who graded the examinations, smack of arbitrary, capricious, illegal, improper or unreasonable action. It is unquestionably true that to some extent the test was subjective, but in examinations of this kind it is impossible as a practical matter to eliminate completely the subjective element.

The court is completely satisfied that the defendant personnel director, who prepared the examination and graded the papers, acted with the highest good faith. There is no question as to his long experience in the position he has held since 1946, nor in regard to his competence in this position. There is no evidence other than that of the personnel director, who gave his opinion as to what are the best answers to the questions. It must be remembered that he was giving his opinion as an expert in the preparation of examinations. The plaintiff did not offer any expert testimony but relies solely on his argument that the answers deemed "best" by the personnel director were not best. As previously noted, the court is not qualified to make such a determination on the basis of its

own knowledge or experience. In the absence of expert testimony to that effect, the court cannot find the questions complained of to be unfair or unreasonable, and the same holds true of the grading.

What has already been said applies with equal force to the plaintiff's "second ground of argument . . . that many of the so-called 'practical' questions do not seem to test the practicality for the job to be filled." The plaintiff argues "that the examination did not fairly test for the position to be filled in that it asked no questions about the sports facilities, marina, athletic events and the promotional activities in reference thereto." It may be noted that it would be impossible to prepare an examination acceptable to everyone concerned. It was the business of the personnel director to prepare examinations. He had been doing so since 1946. It has not been shown to the satisfaction of the court that the examination was illegal or improper by reason of its failure to test for the position to be filled.

Pertinent to this case is the statement of the Supreme Court of California in *Nelson* v. *Dean,* 27 Cal. 2d 873, 881: "Moreover, with particular reference to the administration of civil service, it is the policy of the courts of this state that 'Courts should let administrative boards and officers work out their problems with as little judicial interference as possible. . . . Such boards are vested with a high discretion, and its abuse must appear very clearly before the courts will interfere.' "

Judgment may enter for the defendants, but without costs.