COBBS OF HAMDEN, INC. *v.* COBBS FLORIDA CUPBOARD OF CHAPEL SQUARE NEW HAVEN, INC.

SUPERIOR COURT     NEW HAVEN COUNTY     FILE No. 112951
                   AT NEW HAVEN

Memorandum filed June 26, 1967

*Gamm, Liebman & Rashba,* of Hamden, for the plaintiff.

*Thomas F. Keyes, Jr.,* of New Haven, for the defendant.

FitzGerald, J. Both the plaintiff and the defendant are corporations organized and existing under the laws of the state of Connecticut; the former has its place of business in the town of Hamden and the latter in the city of New Haven. In September 1955, the plaintiff's predecessor, a partnership consisting of Martin Zuckerman and Manfred Levine, filed a trade name certificate in the office of the town clerk in Hamden stating that they were the owners of and conducting the business known as "Cobbs" in the town of Hamden, listing the post office address of the business as 2142 Dixwell Avenue, Hamden. Shortly thereafter, Zuckerman and Levine incorporated under the name of "Cobbs, Incorporated," and conducted a retail business in The Hamden Plaza, a large modern shopping center on Dixwell Avenue in the town of Hamden. In 1963, the plaintiff corporation acquired the assets of the earlier formed corporation and has continued to operate the same kind of retail business at The Hamden Plaza, to which reference will be made later, with emphasis on the word "Cobbs."

At this point, judicial notice is taken of the current telephone directory of The Southern New England Telephone Company for the New Haven area which, in addition to serving New Haven, also serves the surrounding communities of Bethany, East Haven, Hamden, North Haven, Orange, West Haven and Woodbridge (listed in the New Haven section of the directory), with a separate section for the Branford exchange which also includes North Branford. On page 66 thereof, the telephone number and address referable to the plaintiff corporation are listed in this manner: "COBBS statnry [meaning "stationery"] 2100 Dxwl Av Hmdn"; directly beneath, the telephone number and address referable to the defendant corporation are listed in this manner: "COBB'S FLORIDA CUPBOARD OF CHAPEL SQUARE

NEW HAVEN INC 900 Chapel"; and directly under the latter listing appear the telephone number and name of F. Gordon Cashin, with residence address at 329 Elm Street, West Haven. At this time it may be noted that Cashin is in charge of the store operated by the defendant corporation at 900 Chapel Street, New Haven.

The within action was instituted by the plaintiff by writ and complaint dated March 3, 1967, and returned to court on the first Tuesday of April, 1967. Pleadings having been closed with dispatch, trial to the court was had on April 4, 1967, five days after the defendant had opened its outlet for business in a new business building called Chapel Square, known as 900 Chapel Street, New Haven, located southerly across from the New Haven green. Basically, the action instituted by the plaintiff corporation, upon which issue has been joined and a hearing had on the merits, is one for a permanent injunction restraining the defendant corporation from using the name "Cobbs" in the conduct of its business, and for other relief.

The defendant was incorporated in July of 1966. F. Gordon Cashin of West Haven, a former employee of Pratt and Whitney, was the one who conceived the idea of becoming affiliated with The Cobbs Company, Inc., a Florida corporation. To accomplish this end he entered into a franchise agreement with the Florida corporation on May 6, 1966. The cost to Cashin for this undertaking was $6500 plus 5 percent of monthly gross sales. The Florida corporation was the registered owner of various trade names including "Cobbs Florida Cupboard." The latter registration was under the federal trademark statute. The Florida corporation, under franchise agreements such as the one here involved, in which it is referred to as a "franchisor,"

sells through other corporations or individuals, referred to as "franchisees," as in the case of the defendant corporation or Cashin individually, products that it puts out under one of its trademarks or trade names such as gourmet foods, specialties, candies, preserves, fruits, greeting cards, toys, gifts and similar merchandise at retail and otherwise. It was on June 17, 1966, that Cashin entered into a lease for a term of seven years for store premises at 900 Chapel Street, New Haven, "exclusively for the sale at retail of candy, cosmetics, perfumes, cards, special stationery, gifts, novelties and for the taking of orders for fruit gifts such as crates of fruit, fruit baskets and gourmet items. The leased premises shall be operated under the trade name of Cobb's Florida Cupboard."

As already noted, the defendant corporation was incorporated under the laws of Connecticut in July of 1966; and, as already noted, it had not commenced to do business at 900 Chapel Street, New Haven, until five days before the one-day trial on April 4, 1967. Hence Cashin, who conducts the defendant's place of business on Chapel Street, New Haven, could not honestly say at the trial what would be the extent of the defendant's business in the way of the sale of greeting cards and the like to the public. It would appear that the estimate of the "franchisor," based upon similar activities in other outlets conducted elsewhere in the country, of 25 percent to 35 percent of business volume of these products with the balance of business volume relating to the other products, with emphasis on fruits, preserves, candies, and gourmet foods, is probably a fair and reasonable estimate. But as pointed out, the defendant could not be expected to give any concrete figures in terms of percentages or otherwise since the New Haven business had only been operating a matter of days before the trial.

As pointed out earlier, the plaintiff's place of business is located on Dixwell Avenue, Hamden, in The Hamden Plaza. Without question The Plaza is a large shopping center and adjoins The Hamden Mart, also a modern shopping center of some magnitude. Both shopping centers combined total 104 stores and between them have over 10,000 parking spaces available for the parking of cars of customers. It would appear that the current volume of the plaintiff's business in greeting cards and allied lines such as paper gifts and stationery runs about 58 percent of its total business volume, with drawings, art items and engineering supplies running about 42 percent.

The distance between the plaintiff's place of business in Hamden and that of the defendant in New Haven is about five miles. The defendant's place of business, located as it is in the downtown business and office area of New Haven, can be said to cater to a "walk-in" trade, at least as to cards, from office employees on their lunch hours and coffee breaks. The plaintiff's place of business, located as it is in a large shopping area which adjoins another such area, with joint facilities for the parking of thousands of cars, obviously caters to a completely different clientele for all of its products—those countless persons and family members who drive to a modern-day shopping center for a number of items to be found in a number of different stores specializing in various items, including greeting cards and those other specific items which the plaintiff is prepared to sell to those who find that they have a need for such and avail themselves of the shopping opportunity and urge. Incidentally, the average cost of a greeting card ranges from 20 to 25 cents.

As noted in the introductory paragraph of this memorandum, the plaintiff corporation in 1963

acquired the assets of the earlier formed corporation of Cobbs, Incorporated, which in turn had been formed from a partnership consisting of Martin Zuckerman and Manfred Levine. Both of these gentlemen now serve the plaintiff corporation in one capacity or another. The cross-examination of Levine (he had been called as a witness for the plaintiff) brought out what would appear to be the true basis of the inauguration of this litigation by the plaintiff, namely, the fear or apprehension that as time goes on members of the public who otherwise would purchase greeting cards and stationery at the plaintiff's store, located in The Hamden Plaza on Dixwell Avenue in Hamden, would make such purchases at the defendant's store, located in the Chapel Square building on Chapel Street in New Haven, because the name "Cobbs" over the years has become "an image . . . synonymous with greeting cards and social stationery and general stationery." Levine, after so testifying, then stated that he felt "that there is such a confusion right now that can only become worse, and considering the fact that the lines are so similar, and yet they are dissimilar in another area, it can be detrimental to the image we have created in the area."

The court makes the observation that the expressed views of Levine, as the spokesman of the plaintiff corporation at the trial, do not on the evidence or lack of evidence before the court sustain the plaintiff's request for injunctive relief. "No court of equity should ever grant an injunction merely because of the fears or apprehensions of the party applying for it. Those fears or apprehensions may exist without any substantial reason. Indeed they may be absolutely groundless. Restraining the action of an individual or a corporation by injunction is an extraordinary power, always to be exercised with caution, never without the most satis-

factory reasons." *Goodwin* v. *New York, N.H. &
H.R. Co.*, 43 Conn. 494, 500; *Nicholson* v. *Connecticut Half-Way House, Inc.*, 153 Conn. 507, 511.
"[W]rits of injunction are not to be granted for
every trifling cause . . . . They ought not to be
issued, except for the prevention of great and irreparable mischief . . . ." *Whittlesey* v. *Hartford,
P. & F.R. Co.*, 23 Conn. 421, 433; *Crouchley* v. *Pambianchi*, 152 Conn. 224, 227. "There must not only
be a violation of the plaintiff's rights, but such a
violation as is, or will be, attended with actual or
serious damage." *Bigelow* v. *Hartford Bridge Co.*,
14 Conn. 565, 580; *Crouchley* v. *Pambianchi, supra.*

The direct examination of the witnesses Prisco
and Kimball, called by the plaintiff, for the purpose
of giving testimony that they had been confused by
the similarity of the corporate names, was nullified
by phases of their cross-examination to the effect
that they should not have been caused any confusion. This is perhaps a good time to refer to the
excellent observations and discussion by Judge
Frank in *Eastern Wine Corporation* v. *Winslow-Warren, Ltd.*, 137 F.2d 955, 959–60 (2d Cir. 1943),
in which the United States District Court for Connecticut was reversed for enjoining the defendant in
the use of a trade name.

Reference is now made to two decisions which have
emanated from the Connecticut Supreme Court, the
first being in 1929 and the second in 1960: *Middletown Trust Co.* v. *Middletown National Bank*, 110
Conn. 13, 18, 20–21; and *Yale University* v. *Benneson*, 147 Conn. 254, 256–57. The opinions in these
two cases, and the citations therein contained, when
read in the light of the evidence as a whole in the
case at bar warrant the denial of injunctive relief or
any other kind of relief sought by the plaintiff. A
statute adopted by the General Assembly in 1963,

§ 35-11i (see subsection [c]), urged by the plaintiff as controlling, is not so found by the court, and is rejected as being applicable in any material way to the case at bar.[1]

In view of all of the foregoing, judgment is to enter for the defendant with taxable costs as an incident.

---

[1] "Sec. 35-11i. ILLEGAL USE OF MARK. REMEDIES. . . . (c) Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark registered under this chapter, or a mark valid at common law, or a trade name valid at common law, shall be a ground for injunctive relief against unauthorized use of such mark or trade name, or of a colorable simulation thereof, notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services."