[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The issue before the court is whether the court should grant the defendant's motion for a temporary injunction enjoining the plaintiff from using its trade name or service mark.
It is found that the court should deny the defendant's motion for a temporary injunction because the temporary injunction seeks mandatory relief and seeks the same redress as the defendant's request for a permanent injunction.
On September 28, 1992, the plaintiff, a corporation doing business in Danbury, Connecticut, as Connecticut Family Chiropractic, P.C., filed a complaint against the defendant, a corporation doing business in Danbury, Connecticut, as Connecticut Family Orthopedics, P.C., seeking a declaratory judgment to determine whether the plaintiff's use of its current trade name is an infringement of the defendant's service mark. CT Page 3778
On November 20, 1992, the defendant filed an answer and a three count counterclaim, seeking damages and a temporary and permanent injunction against the plaintiff, prohibiting the use of the name "Connecticut Family Chiropractic, P.C.". In first count of the counterclaim, the defendant alleges that it
 commenced the use of the service mark and trade name `Connecticut Family Orthopedics, P.C.' (hereinafter the MARK) on April 6, 1987 to describe the services which it provided and pursuant thereto since that date have:
 a. affixed and used said MARK to all stationery, invoices, and business cards;
 b. used said MARK in the advertising and promotion of the services they provide;
 c. used said MARK exclusively and continuously from said date to the present time.
As a result of its continuous and exclusive use of the mark for more than five years, the defendant contends that the mark has acquired a distinctive or "secondary" meaning in the market in which the defendant is located; therefore, the plaintiff's use of the trade name Connecticut Family Chiropractic, P.C., which it began using on or about May 4, 1992, has caused confusion in the public mind between the defendant's services and the plaintiff's services, resulting in irreparable harm and monetary loss to the defendant.
In the second count of the complaint, the defendant alleges that the plaintiff's use of its trade name violates General Statutes, Sec. 35-11a et seq., and General Statutes, Sec. 42-110b, the Connecticut Unfair Trade Practices Act.
"`A party seeking injunctive relief has the burden of alleging and proving irreparable harm and lack of an adequate remedy at law.'" Pet v. Department of Health Services,207 Conn. 346, 370, 540 A.2d 659 (1988). The granting of a CT Page 3779 temporary injunction lies within the court's sound discretion. Covenant Radio Corporation. v. Ten eighty Corporation, 35 Conn. Sup. 1, 3-4, 390 A.2d 949 (1978). "[T]he requirements for a temporary injunction are (1) establishing a legal right, which involves a determination of the probability of the plaintiff's succeeding on the merits and that there is no other adequate remedy at law; and (2) the imminence of a substantial and irreparable injury to the plaintiff, considered together with the effect of a temporary injunction on the plaintiff and the defendant." Connecticut Assn. of Clinical Laboratories v. Conn. Blue Cross, Inc.,31 Conn. Sup. 110, 113, 324 A.2d 288 (1973).
 In deciding whether it should be granted or, if granted, whether it should be continued or dissolved, the court is called upon to balance the results which may be caused to one party or the other, and if it appears that to deny or dissolve it may result in great harm to the plaintiff and little to the defendant, the court may well exercise its discretion in favor of granting or continuing it, unless indeed, it is very clear that the plaintiff is without legal right.
Olcott v. Pendleton, 128 Conn. 292, 295, 22 A.2d 633 (1941).
In the present case, the defendant, Connecticut Family Orthopedics, P.C., alleges that the plaintiff is infringing upon its service mark by utilizing the name "Connecticut Family Chiropractic, P.C." At common law, "[a] trade name will be protected but not until it has in fact become in the market the name for goods or services coming from or through a particular source or the name for a particular business. This special significance, once acquired, is thereafter its primary meaning in the market, though lexicographically it may have an earlier, different meaning.'" (Citation omitted.) Shop-Rite Durable Supermarkets, Inc. v. Mott's Shop Rite, 173 Conn. 261, 266, 377 A.2d 312 (1977).
 `No inflexible rule can be laid down as to what use of names will constitute unfair competition; this is a question of fact. The question to be determined is whether or not, as a matter of fact, the name is such as to cause confusion in the public mind as between the plaintiff's business and CT Page 3780 that of the defendant, resulting in injury to the plaintiff. The test is whether the public is likely to be deceived . . . . If the court finds that the effect of appropriation by one corporation of a distinctive portion of the name of another is to cause confusion and uncertainty in the latter's business, injure then pecuniarily and otherwise, and deceive and mislead the public, relief will be afforded . . . . It is not sufficient that some person may possibly be misled but the similarity must be such that any person, with such reasonable care and observation as the public generally are capable of using and may be expected to exercise, would be likely to mistake one for another.'
(Citation omitted.) Id., 265-66. Similarly, Connecticut has enacted General Statutes, Sec. 35-11i(c), which provides:
 Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark registered under this chapter, or a mark valid at common law, or a trade name valid at common law, shall be a ground for injunctive relief against unauthorized use of such mark or trade name, or of a colorable simulation thereof, notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services.
(Emphasis added.) "The effect of assuming a corporate name by a corporation under the law of its creation is to exclusively appropriate that name. It is an element of the corporate's existence." American Steel Foundries v. Robertson, 269 U.S. 372, 380, 46 S.Ct. 160, 70 L.Ed. 317
(1926). When the resemblance between business names is so close as to be likely to produce confusion as to such identity, a court will enjoin such appropriation by the offending business. Id., 381. Nevertheless,
 `[n]o court of equity should ever grant an injunction merely because of the fears or apprehensions of the party applying for it. Those fears or apprehensions may exist without any substantial reason. Indeed they may be absolutely groundless. Restraining the action of an CT Page 3781 individual or a corporation by injunction is an extraordinary power, always to be exercised with caution, never without the most satisfactory reasons.'
(Citations omitted.) Cobbs of Hamden, Inc. v. Cobbs Fla. Cupboard of New Haven, Inc., 27 Conn. Sup. 193, 198-99,228 A.2d 523 (1967). As a result, it is found that the court, in the exercise of its sound discretion, may issue a temporary injunction enjoining the plaintiff from using a trade name, if the trade name is so close to the defendant's trade name that there would likely be confusion as to each entity's identity.
However, in the present case, the defendant requests a temporary injunction prohibiting the plaintiff from using its trade name and forcing the plaintiff to make administrative changes to implement the prohibition before the court conducts a proceeding concerning the requested permanent injunction, which seeks the same relief as the temporary injunction. "A temporary injunction is a preliminary order of the court, granted at the outset or during the pendency of an action, forbidding the performance of the threatened acts described in the original complaint until the rights of the parties respecting them shall have been finally determined by the court." Deming v. Bradstreet, 85 Conn. 650, 659,84 A. 116 (1912). "The principle purpose of a temporary injunction is to preserve the status quo until the rights of the parties can be finally determined after a full hearing on the merits. [Citation omitted.] Mandatory injunctive relief is not appropriate at the temporary stage of injunction proceedings." (Citation omitted.) Stamford v. Kovac,29 Conn. App. 105, 109, 612 A.2d 1229. In addition,
 it is readily apparent that the effect of . . . [a temporary injunction] [would be] . . . to grant the . . . [defendant] essentially the same relief that it would receive if it prevailed after a final hearing on the merits. Calling a pig a swan will not make it one. The trial court's order [would be] . . . final in its nature and concept and consequently could be lawfully rendered only after a trial on the merits. `A trial court may not sua sponte transform applications that request temporary injunctions into proceedings on the CT Page 3782 merits of issuance or denial or permanent injunctions.'
(Citation omitted.) Stamford v. Kovac, supra, 110. Accordingly, since the defendant is seeking a mandatory injunction, and since the defendant is seeking the same relief as the permanent injunction, the court denies the defendant's motion for a temporary injunction.
McGrath, J.